In re Yolanda Loretta **GOODLOE, Debtor.**

**DELLWAY VILLA APARTMENTS, Movant,**

v.

**Yoland Loretta GOODLOE, Respondent.**

**Bankruptcy No. 386–01178.**

United States Bankruptcy Court, M.D. Tennessee.

July 15, 1986.

Drake Holliday, Legal Services of Middle Tennessee, Inc., Nashville, Tenn., for debtor.

Barbara J. Perutelli, Schulman, Leroy & Bennett, P.C., Nashville, Tenn., for Dellway Villa Apartments.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

At issue is the debtor's right to assume and cure the default in a government-subsidized residential lease. I find that the debtor's lease agreement was not terminated prior to bankruptcy and is subject to assumption and cure under 11 U.S.C. § 365 (1982 ed., Supp. II 1984). The movant is not ·entitled to relief from the automatic stay.

The following constitute findings of fact and conclusions of law. Bankr.R. 7052. This is a core proceeding. 28 U.S.C. §§ 157(b)(2)(A), (G), (L), (M) (Supp. II 1984).

## FACTS

By agreement dated May 6, 1985, Yolanda Goodloe ("debtor") leased a two bedroom apartment from Dellway Villa Apartments ("Dellway"). The Section 8 rental assistance lease agreement[1] calls for monthly rental, including utilities, of $460. The debtor pays Dellway $174 per month and the remaining $286 is paid by the Department of Housing and Urban Development.

Beginning in October, 1985, the debtor fell behind in payments to Dellway. On February 7, 1986, Dellway filed a detainer warrant[2] against the debtor in Metropolitan General Sessions Court of Davidson County, Tennessee.

On February 19, 1986, an agreed judgment between the debtor and Dellway was entered in general sessions court. The judgment with handwritten notations reads:

AGREED:—TO PAY $100.00 WITH MARCH RENT, 100.00 WITH APRIL RENT, 46.00 AND COSTS WITH MAY RENT

/signed Keene W. Bartley, Attorney for Dellway/

/signed Yolanda Goodloe/

## JUDGMENT

It is hereby ordered and adjudged that plaintiff(s) be restored to the possession of the within described property, for which a Writ of Restitution may issue, and a judgment for $246.00 in favor of plaintiff(s) and against defendant(s), and also for costs of cause, for which an execution may issue.

---

1. "The Section 8 program [42 U.S.C. § 1437f (1982)] is designed to provide safe, sanitary and decent housing to low income families. Pursuant to annual contribution contracts, HUD disburses funds ... to subsidize low income tenants who rent from private owners." *Bakos v. Flint Housing Commission,* 746 F.2d 1179, 1180 (6th Cir.1984). *See* S.REP. NO. 693, 93d Cong., 2d Sess. (1974) *reprinted in* 1974 U.S. CODE CONG. & AD. NEWS 4273, 4277, 4310–17; *and see* 24 C.F.R. Chap. VIII (1985) (Section 8 Housing Assistance programs). The rent is set at a "market rate" determined by the Department of Housing and Urban Development ("HUD"). *See* 42 U.S.C. § 1437f(c)(1); 24 C.F.R. §§ 880.201, 880.203 *et seq.* (1985). The Section 8 program

and related regulations are described in *Holbrook v. Pitt,* 643 F.2d 1261, 1266–68 (7th Cir. 1981).

2. A judgment for unlawful detainer entitles a landlord to possession of the land described in the detainer warrant. TENN. CODE ANN. § 29–18–124 (Michie 1980). A writ of possession or restitution may issue to enforce the judgment. *Id.; and see* TENN. CODE ANN. § 29–18–127 (Michie 1980) (form of writ). The writ directs the local sheriff or constable to remove the defendant from the property and put the plaintiff in peaceable possession. TENN. CODE ANN. § 29–18–127 (Michie 1980).

At the time of the agreed judgment, the debtor owed Dellway $646. She paid $400 to Dellway upon entry of the agreement.

On February 28, 1986, debtor informed Dellway that she could pay her March rent and the March installment of the agreed judgment on March 14. She asked that Dellway's manager, Ms. Whitaker, call her to discuss the matter:

> On February 28, 1986, I called the office at Dellway, and spoke with the assistant manager, Ms. Jobe. I informed Ms. Jobe that it was necessary for me to pay an old traffic ticket in the amount of $90.00 to avoid being arrested, but that I intended to pay my March rent plus the $100.00 on the judgment when I received my next pay check on March 14. I asked Ms. Jobe to have the manager, Ms. Whitaker, call me about this matter, but I was never contacted by Ms. Whitaker.
>
> On March 17, 1986, I contacted Ms. Whitaker at the Dellway office, and offered to pay my March rent, plus a late charge, plus the entire amount of the judgment and court costs which had been taken against me in February.... Ms. Whitaker indicated that she would not be able to accept my offer, because court papers had been filed....

Goodloe affidavit at 3.[3]

On March 13, 1986, Dellway had filed a request for a Writ of Restitution. The debtor learned of this action on March 17, 1986 when she offered to pay Dellway all sums outstanding. Her offer was refused. Debtor filed this Chapter 13 petition on March 18, 1986. A Writ of Restitution was issued by the general sessions court clerk's office on March 18, 1986. The record does not show whether the petition was filed before or after the Writ was issued, however, execution was stayed by the Order for Relief.

## DISCUSSION

Section 365 of the Bankruptcy Code provides that the debtor, "subject to the court's approval, may assume or reject any ... unexpired lease." 11 U.S.C. §§ 365(a), 1322(b)(7) (1982 ed., Supp. II 1984). "This section authorizes the trustee, subject to the court's approval, to assume or reject an ... unexpired lease." H.REP. NO. 595, 95th Cong., 1st Sess. 347 (1977) *reprinted in* 1978 U.S. CODE CONG. & AD. NEWS 5787, 5963, 6303. This power allows the rejection of burdensome obligations while permitting retention of those which have value to the estate. *See Chattanooga Memorial Park v. Still (In re Jolly)*, 574 F.2d 349, 351 (6th Cir.) *cert. denied*, 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978); 2 L. KING, COLLIER ON BANKRUPTCY, ¶¶ 365.01–365.03 (15th ed. 1986). However, reported decisions uniformly recognize that where a lease has terminated under state law prior to bankruptcy, the termination may render the lease unassumable under § 365.[4]

---

3. The debtor's affidavit was admitted without objection or contradiction.

4. *See, e.g., Kopelman v. Halvajian (In re Triangle Laboratories, Inc.)*, 663 F.2d 463 (3d Cir.1981); *In re Escondido West Travelodge*, 52 B.R. 376 (Bankr.S.D.Cal.1985); *Chart House, Inc. v. Maxwell*, 40 B.R. 231 (Bankr.N.D.Ill.1984) *rev'g*, 30 B.R. 982 (Bankr.N.D.Ill.1983); *Grand Hudson Corp. v. GSVC Restaurant Corp.*, 10 B.R. 300, 6 BANKR.CT.DEC. (CRR) 295, 1 COLLIER BANKR.CAS.2d (MB) 991 (Bankr.S.D.N.Y.1980) *aff'g*, 3 B.R. 491, 6 BANKR.CT.DEC. (CRR) 134, 1 COLLIER BANKR.CAS.2d (MB) 727 (Bankr.S.D.N.Y.1980); *In re W.A.S. Food Service Corp.*, 49 B.R. 969, 12 COLLIER BANKR.CAS.2d (MB) 1371 (Bankr.S.D.N.Y.1985); *Kipp v. Depoy*, 29 B.R. 466 (Bankr.N.D.Ind.1983); *Harbour Bay Plaza Associates, Ltd. v. Foxfire Inn of Stuart Florida, Inc.*, 30 B.R. 30 (Bankr.S.D.Fla.1983).

The debtor argued that the term "unexpired" in § 365 does not preclude assumption of *residential* leases which have been terminated according to state law if the debtor is in physical possession of the leasehold. *Compare* 11 U.S.C. § 365(a) *with* § 365(c)(3); *and see United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *In re Onio's Italian Restaurant Corp.*, 42 B.R. 319 (Bankr.S.D.N.Y. 1984) (discussing the effect of *Whiting Pools*). This court has twice concluded that under Tennessee law, a lease is "unexpired" at least until a writ of possession may issue where the debtor/lessee remains in possession of residential premises. *See Lebanon Housing Authority v. Shannon*, 54 B.R. 219, 220 (Bankr.M.D.Tenn. 1985) (Paine, J.); *Smith v. Morrese Karr Realty Co.*, Case No. 380–01112, Adv.Proc. No. 380–0323, slip op. (Bankr.M.D.Tenn. Nov. 4, 1980) (Jennings, J.); *and see* TENN. CODE ANN.

The agreed judgment of February 19, 1985—apparently drafted by Dellway's counsel at the General Sessions Court hearing and signed by the debtor without aid of counsel—is ambiguous if not internally inconsistent. The printed portion of the form judgment awards Dellway possession of the debtor's apartment, $246 and costs but explicitly acknowledges that a writ for possession is available by separate process. The handwritten addition to the form indicates that the $246 and costs will be paid "with March Rent ... With April Rent ... With May Rent." Dellway argues that this agreed judgment "terminated" the lease agreement itself, or that the lease "terminated" when the debtor did not make the March rent payment and $100 installment toward the judgment amount by March 1. The debtor contends that the agreed judgment and $400 initial payment continued all the original lease terms with an additional term of the lease that the debtor retire the $246 remaining arrearage with the next three months' rents.

The debtor's interpretation of the February 19 agreed judgment is more consistent with the evidence in this case. The parties must have contemplated continuation of the original lease else the handwritten references in the judgment to future rental payments would be meaningless. The parties clearly contemplated the debtor's continued possession of the apartment, consistent with the original lease, notwithstanding the printed form judgment for possession in favor of Dellway. Dellway's argument that the March rent and $100 arrearage payment were due on or before March 1 must be based on application of ¶ 3 of the original lease which calls for monthly rental on the first of each month. The agreed judgment contains no other provisions covering or altering the multitude of other provisions contained in the 12-page Section 8 rental agreement signed in 1985. The February general sessions agreement simply continued the original lease with the

additional term of installment payment of the balance of the rent arrearage.

The debtor's lease agreement with Dellway contains extensive termination provisions. It provides: "Any termination of this Agreement by the Landlord must be carried out in accordance with HUD regulations, State and local law, and the terms of this Agreement." Lease agreement ¶ 23(b). "If the Landlord proposes to terminate this Agreement, the Landlord agrees to give the Tenant written notice of the proposed termination.... Notices of proposed termination ... must be given in accordance with any time frame set forth in State and local law." Termination notices under the lease must specify the date of termination; state the grounds for termination, and state that the tenant has 14 days to remedy the breach in which case the agreement will not terminate. Lease ¶ 23(c).

Under Tennessee law, a landlord is generally required to give at least 30 days' notice of termination for material noncompliance with the terms of a residential rental agreement. TENN. CODE ANN. § 66–28–505 (Michie 1982). If a tenant remedies the breach prior to the date specified in the notice, the rental agreement will not terminate. *Id.* Written notice by the landlord of nonpayment of rent is required unless otherwise specifically waived in a written rental agreement. TENN. CODE ANN. § 66–28–505(b) (Michie 1982).

Under these facts, after entry of the February 19 agreed judgment Dellway was bound by its contract to give the debtor new notice of any intention to terminate and new opportunity to cure default. Had Ms. Whitaker responded to the debtor's February 28 request and notified her of Dellway's intent to terminate the lease, Goodloe would have had the right to cure her default within 30 days under the provisions of the lease agreement, and in fact, Goodloe tendered full payment of her

§ 29–18–126 (Michie 1980) ("no execution or writ of possession shall issue ... until after the lapse of ten (10) days from the rendition of the judgment"). Because the debtor's lease agree-

ment had not been validly *terminated* accordingly to state law, I need not address the debtor's argument.

March rent and all arrears on March 17. Dellway failed to give Goodloe any notice that her two week delay in payment was unacceptable and, in reliance thereon, Goodloe took no steps to remedy her default at an earlier date.

Accordingly, I find that Goodloe's lease was not terminated under Tennessee law prior to the order for relief in this case.[5] The debtor is entitled to assume the lease under § 365. Her interest in the lease is property of the estate under 11 U.S.C. § 541 (1982 ed., Supp. II 1984). Her interest is protected by the automatic stay. 11 U.S.C. § 362 (1982 ed., Supp. II 1984).[6]

An appropriate order will be entered.

---

**5.** It is thus appropriately left for another day to decide whether a judgment for unlawful detainer itself places a residential lease beyond the § 365-grasp of a debtor; whether the issuance or execution of a writ of restitution has such effect; or whether some other event in the death-spiral of a residential lease under Tennessee law marks the end of a debtor's powers of revival under the Bankruptcy Code.

**6.** Case law consistently holds that even if the debtor's interest in the leasehold is merely possessory, that interest is property of the estate and protected by the automatic stay. 11 U.S.C.

§ 362 (1982 ed.). Generally, absent bad faith, the debtor is protected for a time sufficient to renegotiate with the lessor or relocate. *Fields v. Lewis,* 15 B.R. 643, 8 BANKR.CT.DEC. (CRR) 528 (Bankr.E.D.Pa.1981); *Gambogi v. Capodalupo,* 20 B.R. 587 (Bankr.D.R.I.1982); *Depoy,* 29 B.R. at 466; *Pickus v. Vitagliano,* 8 B.R. 114, 7 BANKR.CT.DEC. (CRR) 189 (Bankr.D.Conn. 1980) *and see In re Lane Foods,* 213 F.Supp. 133 (D.N.Y.1963) (Act case). If, as here, the debtor may assume the lease under § 365, then the stay provides greater protection.