**In re Melanie Lynn TALLEY, Debtor.**

**GALLATIN HOUSING AUTHORITY, Movant,**

**v.**

**Melanie Lynn TALLEY, Respondent.**

**Bankruptcy No. 386–02338.**

United States Bankruptcy Court, M.D. Tennessee.

Dec. 16, 1986.

Jimmie Lynn Ramsaur, Shipley & Behm, Nashville, Tenn., for debtor.

Kurt O.E. Tschaepe, Gallatin, Tenn., for Gallatin Housing Authority.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

 The question presented is whether a Chapter 13 debtor may cure the default and assume a residential lease where judgment for unlawful detainer has been entered prior to the petition but no writ for possession has been served upon the debtor.[1] I find that execution of a writ of possession marks the point after which a debtor may not rehabilitate a residential lease.

The following constitute findings of fact and conclusions of law. Bankr.R. 7052. This is a core proceeding. 28 U.S.C. §§ 157(b)(2)(A), (G), (L), (M) (Supp. II 1984).

### I.

The debtor rents an apartment from the Gallatin Housing Authority ("GHA"). The proof of claim filed by GHA indicates the monthly rental of $19.00 was based upon the debtor's income.[2]

On April 1, 1986, GHA requested a warrant from the General Sessions Court of Sumner County, Tennessee, alleging unlawful detainer of the apartment by the debtor. The warrant was served on the debtor by the Sumner County Sheriff's De-

---

1. Decisions in this district discussing variations of this issue include *Dellway Villa Apartments v. Goodloe (In re Goodloe)*, 61 B.R. 1016 (Bankr.M.D.Tenn.1986); *Lebanon Housing Authority v. Shannon*, 54 B.R. 219 (Bankr.M.D.Tenn.1985); *In re Key*, 64 B.R. 786 (Bankr.M.D.Tenn.1986); *Lane College Housing, Inc. v. Batey (In re Batey)*, No. 385–02937 (Bankr.M.D.Tenn. Dec. 17, 1985); *In re Murray*, No. 385–01298 (Bankr.M.D.Tenn. Aug. 15, 1985). *Smith v. Maurice Karr Realty Co.*, No. 380–0323 (Bankr.M.D.Tenn. Nov. 4, 1980).

2. Though the parties have never supplied the court with the lease between the debtor and GHA, it appears that this lease is government subsidized. *See* analysis of the Section 8 rental assistance program in *Dellway Villa Apartments v. Goodloe (In re Goodloe)*, 61 B.R. 1016, 1017 n. 1 (Bankr.M.D.Tenn.1986).

partment. The debtor failed to appear at the hearing on April 24, 1986 and a pre-printed default judgment was entered that GHA "be restored to the possession" of the apartment.

On May 16, 1986, GHA returned to General Sessions Court for a Writ of Ejectment directing the sheriff of Sumner County to remove the debtor from the apartment and restore GHA to possession.[3] A deputy sheriff attempted but failed to serve the Writ of Ejectment. On June 4, 1986, the deputy returned the Writ to the General Sessions Court with the notation "unable to execute ejectment before the defendant filing [sic] bankruptcy."

After issuance of the Writ of Ejectment and before return of the writ unexecuted, GHA, without participation of the sheriff, terminated gas and water service at debtor's apartment. The debtor and her children were forced to move from the apartment. The debtor moved some of her personal belongings out of the apartment, but the bulk of her household goods remained.

On June 3, 1986, the debtor filed a Chapter 13 petition. Also on June 3, and again without assistance from the sheriff, employees of GHA removed items of personal property from debtor's apartment without her permission. After notice of the debtor's bankruptcy, GHA returned the debtor's personal property and restored utility service.

The debtor's Chapter 13 plan proposes to cure all defaults under the lease with 10% interest on the arrearage and to maintain the continuing rent on a monthly basis. GHA objects to confirmation and seeks relief from the stay to evict the debtor.

## II.

Section 365 provides in relevant part:

(a) ... [T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365 (1982 ed. & Supp. II 1984).

Section 365 embodies long-established policy that a trustee in bankruptcy be empowered to make beneficial decisions to retain or discard a debtor's executory contracts and unexpired leases. This policy was articulated by the Supreme Court almost a century ago:

[The assignees in an "assignment in bankruptcy"] were not bound ... to accept property of an onerous and unprofitable nature, which would burden instead of benefit the estate, and they could elect whether they would accept or not, after due consideration and within a reasonable time....

*Sparhawk v. Yerkes,* 142 U.S. 1, 13, 12 S.Ct. 104, 106, 35 L.Ed. 915, 918 (1891). *See Dickson v. Irving Trust Co. (In re McCrory Stores Corp.),* 69 F.2d 517, 518 (2d Cir.1934) (The trustee's right in a leasehold is "an option to acquire title if acquisition should seem to the trustee best for the estate."), *quoted in Fletcher v. Surprise (In re Northern Indiana Oil Co., Inc.),* 180 F.2d 669, 676 (7th Cir.1950), *cert. denied,* 340 U.S. 824, 71 S.Ct. 58, 95 L.Ed. 605 (1950); *In re Westview 74th Street Drug Corp.,* 59 B.R. 747, 754 (Bankr.S.D.N.Y. 1986) ("The aim of the statutory authority to assume a lease is to assist in the debtor's reorganization effort.").

---

**3.** *See* note 5 and accompanying text, *infra.*

■ In a Chapter 13 case, an unexpired lease can be assumed or rejected in the debtor's plan. 11 U.S.C. § 1322(b)(7) (1982 ed. & Supp. II 1984). If the Chapter 13 debtor proposes to assume an unexpired lease, the debtor must comply with the provisions of 11 U.S.C. § 365.[4] An "unexpired" lease that is in default cannot be assumed unless the debtor cures all defaults or provides adequate assurance that the defaults will be cured and future rentals will be paid. 11 U.S.C. § 365(b)(1) (1982 ed. & Supp. II 1984). Section 365(b)(1) liberally permits curing of defaults notwithstanding contrary provisions in the lease:

> Generally, under the old law, although a trustee could assume a contract or lease, he took such contract or lease as he found them and thus was required to cure any default according to the precise terms or provisions in the contract or lease rather than upon any other basis. In many instances, however, the trustee was unable to effect any cure in accordance with the terms of the lease or contract because either (1) the contractually provided grace period for the cure of a default had already expired thus rendering the lease incapable of being cured, or (2) he was unable to presently cure from a monetary standpoint due to the lack of immediate funds. In these situations, even though termination of the lease had not yet been completed under state law, the lease was nevertheless the subject of noncurable defaults even in the hands of the trustee and thus was unassumable....
>
> ... Under § 365(b), so long as the lease has not yet been terminated, a trustee may assume irrespective of whether or not any contractual grace period for the curing of defaults has expired and irrespective of whether he has the immediate present ability to fully cure any rent arrearage.

*Executive Square Office Bldg. v. O'Connor and Associates, Inc.,* 19 B.R. 143, 145–46, 9 B.C.D. (CRR) 35, 36 (Bankr.N.D.Fla. 1981).

The right to cure is dependent on the existence of a lease: only an "unexpired" lease may be assumed. 11 U.S.C. § 365 (1982 ed. & Supp. II 1984). *See Hazen v. Hospitality Associates, Inc. (In re Hospitality Associates, Inc.),* 6 B.R. 778, 780, 6 B.C.D. (CRR) 1142, 1142 (Bankr.D.Or.1980). Neither the Code nor its legislative history define when a lease is "expired." The courts have struggled to determine when a lease is expired, often by analyzing state law and the terms of the contract. *See In re Escondido West Travelodge,* 52 B.R. 376 (S.D.Cal.1985) (lease terminated when landlord filed unlawful detainer action because that is when lessee's right to possession is terminated under Florida law); *Chart House, Inc. v. Maxwell (In re Maxwell),* 40 B.R. 231 (N.D.Ill.1984) (sublease terminated under Illinois law by sending notice and filing suit); *Harbour Bay Plaza Associates v. Foxfire Inn (In re Foxfire Inn),* 30 B.R. 30 (Bankr.S.D.Fla.1983) (lease that terminated pursuant to its terms and applicable state law had expired); *Bistrian v. Easthampton Sand & Gravel Co., Inc. (In re Easthampton Sand & Gravel Co., Inc.),* 25 B.R. 193, 7 C.B.C.2d 903 (Bankr.E.D.N.Y.1982) (lease that had not yet been terminated under its terms was unexpired); *Executive Square Office Bldg. v. O'Connor and Associates, Inc.,* 19 B.R. 143, 9 B.C.D. (CRR) 35 (Bankr.N.D.Fla.1981) (no right to assume and cure a lease that has expired according to its terms or terminated under state law); *Kearny Mesa Crossroads v. Acorn Investments (In re Acorn Investments),* 8 B.R. 506, 7 B.C.D. (CRR) 135 (Bankr.S.D.Cal.1981) (state court declared lease forfeited by its terms); *Hazen v. Hospitality Associates, Inc. (In re Hospitality Associates, Inc.),* 6 B.R. 778, 6 B.C.D. (CRR) 1142 (Bankr.D.Or.1980) (an unexpired lease is one that has not already expired according to its terms or which terminated pre-bankruptcy under state law); *Omni International, Ltd. v. Mimi's of Atlanta, Inc. (In re Mimi's of Atlanta,*

---

**4.** This proposition was subject to some dispute prior to the 1984 Amendments to the Bankruptcy Code. *See Benevides v. Alexander (In re Alexander),* 670 F.2d 885 (9th Cir.1982).

*Inc.),* 5 B.R. 623, 6 B.C.D. (CRR) 807 (Bankr.N.D.Ga.1980) (lease terminated under its terms); *In re GSVC Restaurant Corp.,* 3 B.R. 491, 6 B.C.D. (CRR) 134 (Bankr.S.D.N.Y.1980) (lease terminated under state law); *Phoenix Associates, Inc. v. Pagoda International, Inc. (In re Pagoda International, Inc.),* 26 B.R. 18, 20 n. 1 (Bankr.D.Md.1982) (lease terminated by state court judgment for possession against debtor who filed a Chapter 11 petition as "another delaying tactic").

GHA argues that "expired" equates to "default" or "terminated" where "default" is defined by the contract and "terminated" is defined by the contract and state law. The debtor responds that "expired" means the term of the lease and all possible contractual extensions thereof have passed.

GHA's argument is inconsistent with the Bankruptcy Code. Section 365(b)(1) deals specifically with the situation where there has been a "default" in an "unexpired" lease, thus demonstrating that Congress considered "default" and "unexpired" to have distinct meanings. If every contractual default rendered the lease "expired" for purposes of § 365, then the "curing default" provisions of § 365 would be reduced to surplusage. Similarly, Congress was cognizant of differences between "terminated" and "unexpired" for § 365 purposes. For example, § 365(c) prohibits a trustee to assume or assign an "unexpired" lease of *non* residential real property if the lease "has been *terminated* under applicable nonbankruptcy law." 11 U.S.C. § 365(c)(3) (1982 ed. & Supp. II 1984) (emphasis added). There is no similar restriction on the assumption or assignment of a *residential* lease. *See also* 11 U.S.C. § 362(b)(10) (stay not applicable to nonresidential lease that has "terminated" through "expiration" of contractual term). It is doubtful that Congress intended to allow debtors to contract away a trustee's power of assumption through a lease term which equates a default with "termination." "Termination," "default" and "expired" are not coextensive; to allow full equation would thwart the Congressional intent that trustees (and Chapter 13 debtors) may cure defaults for the benefit of the estate pursuant to § 365.

The debtor's argument is equally unappealing as it would admit the possibility of final destruction of all tenant rights under contract and under state law and yet the lease still be subject to rehabilitation if the original term of the contract has not passed. It is the logic of § 365 that residential leases in default or terminated may yet be unexpired for purposes of assumption and rejection; however, "expired" contains more than the mere passage of time. *See* 11 U.S.C. § 362(b)(10) ("expiration of the stated term").

Reference to Tennessee law to determine when a lease has "expired" is not satisfying. Under Tennessee law, the process of deterioration of a residential lease has many steps, is easily interrupted and the process varies from county to county. The Tennessee Uniform Residential Landlord and Tenant Act ("URLTA"), TENN.CODE ANN. § 66-28-101 *et seq.,* is applicable only in counties with populations greater than 200,000. TENN.CODE ANN. § 66-28-102 (1982). Chapter 18 of Title 29 of the Tennessee Code provides general practice and procedure for forcible entry and detainer.

In a URLTA county, state law prohibits certain terms of lease contracts and requires other terms which are not prohibited or required in non-URLTA counties. Many of the required and prohibited provisions relate to default, termination and the legal process of regaining possession. TENN. CODE ANN. §§ 66-28-201–204 (1982 & Supp.1986). For example, in a URLTA county a landlord cannot enforce a confession of judgment clause. The tenant's rights of possession, use and occupancy of leased residential property are defined for URLTA counties only. *See* TENN.CODE ANN. § 66-28-101 *et seq.*

Termination of a lease and regaining possession are distinct processes under the URLTA. *See* TENN.CODE ANN. §§ 66-28-508, 510 (1982). Also, Tennessee law recognizes a difference between the expira-

tion of a residential lease and its termination. For example, Section 66–28–512 deals with the termination of a periodic or hold over tenancy in a URLTA county. Sub-section 66–28–512(c) provides that if a tenant remains in possession without a landlord's consent "after *expiration* of the term of the rental agreement *or its termination,*" the landlord may bring an action for possession. TENN.CODE ANN. § 66–28–512(c) (1982) (emphasis added).

If a landlord in any county believes that a tenant is unlawfully detaining property, the landlord may seek a writ for "forcible or unlawful entry or detainer." TENN. CODE ANN. § 29–18–104 (1980). The warrant must be properly served, and a trial held on notice. *See* TENN.CODE ANN. §§ 29–18–115, 117 (1980). The landlord is prohibited in a URLTA county to diminish services such as utilities in an effort to remove a tenant. TENN.CODE ANN. §§ 66–28–504, 511 (1982).

A judgment of unlawful detainer orders the landlord restored to possession but if the tenant disputes the landlord's repossession, the landlord cannot self help but must return to court to execute upon its judgment by writ of possession.[5] No writ may issue for 10 days after entry of the judgment. TENN.CODE ANN. § 29–18–126 (1980). The tenant may appeal and post bond. TENN.CODE ANN. § 29–18–130 (Supp.1986). In the alternative, the tenant may attack the landlord's judgment by certiorari and remain in possession by posting bond. TENN.CODE ANN. § 29–18–129 (1980). There is dispute under Tennessee law as to the proper timing for an appeal from a judgment of unlawful detainer. One view gives a losing tenant 10 days in which to appeal and post bond. *See* TENN.CODE ANN. § 27–5–108 (1980). Another view requires the tenant to post bond within two days. TENN.CODE ANN. § 29–18–128 (1980); Op.Tenn.Att'y Gen. 315 (1981). The Tennessee Supreme Court has granted an application for permission to appeal to resolve the dispute.

*See Steinhouse v. Reynolds,* No. 86–23–I (Tenn. April 21, 1986).

Tennessee law thus acknowledges differences among default, termination and expiration but the patchwork of Tennessee landlord tenant law suggests no bright line definition of "expired" for bankruptcy purposes. The residential landlord tenant relationship is layers of rights which peel away during the process described above. The nature of the rights and the steps in the process will vary from contract to contract and from county to county.

The United States Court of Appeals for the Sixth Circuit faced a similar problem of statutory interpretation in *Federal Land Bank of Louisville v. Glenn (In re Glenn),* 760 F.2d 1428 (6th Cir.1985). The issue in *Glenn* was identification of the point in the process of foreclosure after which a Chapter 13 debtor loses the power to cure defaults and reinstate a home mortgage. Section 1322(b)(5) states in part that Chapter 13 debtors may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any ... secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5) (1982 ed. & Supp. II 1984). Consolidated for review were Chapter 13 plans proposing to rehabilitate home mortgages at various stages of default and foreclosure under applicable state law.

The court in *Glenn* fixed the cut off date for the right to cure defaults in home mortgages as the date of the foreclosure sale. Admitting that the statute was subject to other interpretations, the court stated that "[a]ny earlier date meets with the complaint that the rights conferred by the statute upon debtors to cure defaults have been frustrated." *Glenn,* at 1436. The court explained:

foreclosure sale normally comes only after considerable notice giving the debtor the opportunity to take action by seeking alternative financing or by negotiating to

---

**5.** Writ of Possession is the statutory description. *See* TENN.CODE ANN. § 29–18–127 (1980). It is not uncommon for this writ to be described as a Writ of Restitution or Writ of Ejectment. *See, e.g., Ramsey v. Hood,* 136 Tenn. 597, 191 S.W. 129 (1917).

cure the default or by taking advantage of the benefits of Chapter 13. Therefore, setting the date of sale as the cut-off point avoids most of what some courts have described as the "unseemly race to the courthouse." Concededly, no scheme can avoid that possibility altogether, but the time and notice requirements incident to most sales at least provide breathing room and should deter precipitate action that might be expected if the cut-off date were measured by the fact of notice of acceleration or the fact of filing suit.

*Id.* at 1435–36.

To bring certainty to the curing of mortgage defaults in Chapter 13 cases, the *Glenn* court observed:

sale of the mortgaged property is an event that all forms of foreclosure, however denominated, seem to have in common. Whether foreclosure is by judicial proceeding or by advertisement, and regardless of when original acceleration is deemed to have occurred, the date of sale is a measurable, identifiable event of importance in the relationship of the parties. It is at the heart of realization of the security.

*Id.* at 1435.

Like the foreclosure sale of mortgaged property, the dispossession of a tenant from leased property is at the heart of the realization of a judgment for unlawful detainer under Tennessee law. Only then—upon execution of the Writ of Possession—is the termination of the landlord tenant relationship "measurable [and] identifiable." Prior to that time, the tenant has many and varied rights to upset the landlord's intent to reacquire the leasehold. Execution of a writ of possession is the one step in the process that has certainty in all counties and in all contractual situations. It is the point in time at which the process of the law physically severs the debtor from the tenancy. For purposes of application of a Chapter 13 debtor's right to cure default and maintain payments under a residential lease, I find that the lease is not "expired" until execution of the Writ of Possession by service upon the tenant.

This holding is supported by a recent decision of the United States District Court for the Western District of Tennessee, *Buckner v. Colonial House Apartments,* 64 B.R. 90 (W.D.Tenn.1986). In *Buckner,* the landlord was awarded a judgment for unlawful detainer of an apartment. On the date the judgment became final, the debtor filed a Chapter 13 petition. The debtor's plan proposed to cure the arrearages and to make future rent payments directly to the landlord. The bankruptcy court declined the proposed cure and assumption of the lease. The district court reversed and remanded "for the purpose of allowing the [debtor] to cure the default in her Chapter 13 plan and reaffirm her apartment lease." *Buckner* at 90–91.

The Writ of Possession was not served on this debtor prior to the filing of bankruptcy. If the debtor can demonstrate compliance with § 365(b)(1), the debtor may assume this lease.

An appropriate order will be entered.