Doris ROBINSON, Debtor–Appellant,

v.

CHICAGO HOUSING AUTHORITY,
Movant–Appellee.

No. 94–2656.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 1, 1994.

Decided April 26, 1995.

Rehearing Denied July 28, 1995.

Sheryl A. Fyock, Office of Trustee, Chicago, IL, for trustee Jack McCullough.

Cary G. Schiff (argued), Chicago, IL, for appellee Chicago Housing Authority.

David Yen (argued), Clara A. Carter, Legal Assistance Foundation of Chicago, Chicago, IL, for debtor-appellant Doris Robinson.

Before CUDAHY, ESCHBACH and MANION, Circuit Judges.

CUDAHY, Circuit Judge.

## I. Facts

The debtor here, Doris Robinson, has lived in Chicago Housing Authority (CHA) housing for low-income individuals for about 35 years and in the apartment at issue here for 15 years. At the end of 1992 she had difficulty making her rent payments of $22 per month, and by December of 1992 she owed CHA $66 of back rent. She offered payment of $60, but CHA would not accept partial payment.

CHA served Robinson with a Notice of Termination of Tenancy on January 7, 1993. The notice informed Robinson that the failure to pay $88 within 14 days would result in termination of her lease on the 15th day. She did not meet the 14 day deadline, and CHA filed a Forcible Entry and Detainer Action against Robinson in the Circuit Court of Cook County on February 23, 1993.

The court entered a Judgment of Possession in favor of CHA on May 4th, 1993. The ruling determined that CHA could accept Robinson's rent if it so chose, but that, should it choose not to accept the rent, as was its right, a writ of possession would issue 30 days later on June 3, 1993. Robinson attempted to pay the full rent due before June 3rd, but CHA chose not to accept the payment. This apparently inflexible attitude of CHA has given us particular cause to consider carefully Robinson's claims.

On June 3, 1993, the day the writ of possession was to issue, Robinson filed for bankruptcy and asked that the trustee assume her lease under her Chapter 13 reorganization plan. As a result, she retained possession of the apartment. However, Bankruptcy Judge Sonderby granted CHA's subsequent motion for relief from the automatic stay, ruling that the trustee could not assume the lease as part of Robinson's Chapter 13 plan because there was no lease left to assume. The district court affirmed the bankruptcy court's decision. Robinson now appeals, arguing that a distinction exists between a "terminated" lease and an "expired" lease, and that this distinction allows the trustee to assume the lease in her case. We disagree and affirm.

## II. Discussion

### A. Federal Bankruptcy Law

Robinson argues that her lease may be assumed by the bankruptcy trustee under 11 U.S.C. § 365(a). Section 365(a) states that "the trustee ... may assume or reject any executory contract or *unexpired* lease of the debtor" (emphasis added). When a debtor files for bankruptcy, the debtor's possible interest in such a lease is protected by an automatic stay under 11 U.S.C. § 362. This stay prevents a landlord from

initiating or pursuing claims against the debtor, including state eviction proceedings. 11 U.S.C. § 362. However, a landlord may file for relief from the stay if the debtor does not have a valid interest in the leasehold.

Robinson filed for bankruptcy under § 365(a), and the trustee in normal course assumed what Robinson claims was her unexpired lease. However, CHA filed for relief from the automatic stay, which otherwise applied, on the grounds that the lease was not "unexpired" and thus was not assumable. The bankruptcy court and, subsequently, the district court granted CHA the requested relief, agreeing that Robinson's lease was not assumable because it was not "unexpired." Robinson, however, argues that both federal bankruptcy law and state law establish that, although her lease may have been "terminated," it had not "expired" under § 365(a) and should have been deemed assumable.

As Robinson concedes, neither § 365 nor the rest of the federal bankruptcy code defines "unexpired." *See, e.g., In re Collier,* 163 B.R. 118, 120 (Bankr.S.D.Ohio 1993); *In re Talley,* 69 B.R. 219, 223 (Bankr.M.D.Tenn. 1986). In fact, it is well established that courts look to state law to determine what constitutes an "unexpired" lease. *See, e.g., Cunningham v. Lifelink Corp.,* 159 B.R. 230 (N.D.Ill.1993); *In re Maxwell,* 40 B.R. 231 (N.D.Ill.1984); *Collier,* 163 B.R. at 120; *Talley,* 69 B.R. 219; *In re Goodloe,* 61 B.R. 1016 (Bankr.M.D.Tenn.1986). However, Robinson argues that a distinction exists in the *federal* bankruptcy code between "terminated" and "expired." This distinction is controlling here, she contends, because it signifies that a *terminated* lease may still be *unexpired* and thus assumable by the trustee. Therefore, she asserts that, even if her lease is terminated, Congress intended that such terminated residential leases continue to be assumable while the stated term of the original lease is "unexpired"; hence, her lease is assumable.

Robinson points to 11 U.S.C. § 362(b)(10), § 541(b)(2) and § 365(c)(3) as evidence of congressional intent to treat "terminated" leases differently than "expired" leases. Section 362(b)(10) provides that the automatic bankruptcy stay does not apply to actions by a lessor of nonresidential real property against a debtor with respect to a lease that has "terminated by the expiration of the stated term of the lease." Similarly, § 541(b)(2) excepts from property of the estate any possible interest a debtor might have in a lease of nonresidential property that has "terminated at the expiration of the stated term of such lease." These provisions protect lessors of nonresidential property from having to petition for relief from the automatic stay if the stated term of the lease has run. These provisions thus apply when certain leases have been brought to an end in a particular way and create special rules for those circumstances. These provisions may not, however, be construed to mean that the reaching of the stated term is the *only* way that leases can expire, nor do they indicate that premature termination under state law is not another applicable mode of expiration of the lease. *See, e.g., Talley,* 69 B.R. at 223. Thus § 362(b)(10) and § 541(b)(2) do not support Robinson's argument that their use of the words "terminated" and "expiration," with the qualification that the "expiration" be of the stated term of the lease, has significance for § 365(a). The structure of § 362(b)(10) and § 541(b)(2) does not suggest that the word "unexpired" without qualification as used in § 365(a) must be construed to signify only those leases whose stated term has *not* run.

Section 365(c)(3), Robinson's third basis for her argument, presents a possibly more difficult problem. It provides that a lease may not be assumed by the trustee if "such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief." 11 U.S.C. § 365(c)(3). Robinson argues that Congress deliberately drafted § 365(c) to apply to nonresidential leases that have been *terminated* under the provisions of nonbankruptcy law in order to draw a distinction between "terminated" leases in § 365(c) and "unexpired" leases in § 365(a). This distinction, she argues, creates broader *federal* protections for residential leases because it means that the only non-assumable residential leases are those whose stated term has

run. Residential leases that have ended for reasons other than the running of the stated term, she asserts, are "unexpired" while the stated term of the lease is still running, even if the lease has been ended under state law before its stated term. To read the statute otherwise, she claims, would ignore the distinction Congress was trying to make between nonresidential leases in § 365(c) and residential ones in § 365(a).

At least superficially, Robinson's argument has some appeal, principally because the application of state law to § 365(a) means that § 365(a) and § 365(c) will ordinarily be applied in the same way. In the usual interpretation of § 365(a), courts look to state law to determine whether a lease is "unexpired." The question is whether the lease has ended under state law, either through eviction proceedings, the running of the stated term of the lease or through other means that otherwise legally sever the landlord-tenant relationship. In this analysis, any method that fully severs the rights of the tenant in the property renders the lease expired; the only question is at what point in time the severance is final and complete.

The ultimate result of looking to state law in applying § 365(a), however, renders the analysis under § 365(*a*) no different than that under § 365(*c*), which provides that nonresidential leases cannot be assumed if they have been "terminated under applicable nonbankruptcy law." Yet § 365(c) was drafted to apply only to nonresidential leases, apparently in an effort by Congress to create some difference in assumability between residential and nonresidential leases. As a result, there is some apparent merit to Robinson's argument that, in view of what appears to be an obvious attempt to differentiate residential from nonresidential leases, we cannot continue to rely on state law to determine when a lease has expired under § 365(a) because in doing so, we would be using essentially the same analysis for residential leases under § 365(a) as for nonresidential leases under § 365(c).

Despite this apparent difficulty, however, neither the legislative history of § 365(c) nor the debtor here provides any authority for the proposition that Congress intended its choice of words to create expanded *federal* protection for residential leases. Section 365(c) was added to the Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984 in response to concerns of shopping center owners and tenants. Congress recognized that the long delays attendant to resolution of bankruptcy disputes and the prolonged inaction under an automatic bankruptcy stay are particularly harmful to shopping centers. S.Rep. No. 65, 98th Cong., 1st Sess. 33–43 (1983). Congress was concerned because the fortunes of separate retail businesses in the same shopping center are inextricably linked; if one retail space in the center remains vacant for a long period of time the business of the other tenants suffers accordingly. *Id.* Because the bankruptcy of one shopping center tenant so seriously affects other tenants, and because attempts to remedy this problem in the 1978 Bankruptcy Reform Act had not been successful, special provisions, including § 365(c), were drafted to expedite these bankruptcy proceedings and protect other tenants. S.Rep. No. 65, 98th Cong., 1st Sess. 35 (1983). Thus § 365(c) is a deliberate addition to the Code crafted to address a specific issue which has nothing to do with residential leases.

Further, in enacting the Bankruptcy Amendments of 1984, Congress stated that "a distinction between residential and nonresidential leases is made here and in other provisions in this subtitle ... in order to avoid depriving residential tenants of whatever consumer protections they may have under applicable *non-bankruptcy* law." Sen. Rep. 98–65, 98th Cong. 1st Session 37 (1983) (emphasis added). Therefore, rather than supporting Robinson's claim that Congress was suggesting enhanced *federal* protections for residential lessees, the legislative history here supports the established practice of looking to *state* law to determine whether a lease is unexpired.

We must also reject Robinson's approach on grounds of rational policy. If we do as she asks and define an "unexpired" lease under § 365(a) solely as one whose stated term has not yet run (even though it might have been otherwise terminated), we would allow bankrupt tenants whose lease had

clearly been abrogated and who had perhaps already been evicted to have a continuing interest in the lease simply because its stated term had not yet expired. Thus, leases that state courts had determined to be at an end could suddenly be revived, and landlords would face continuing uncertainty whether a lease was in fact alive or dead. Such a result seems irrational and is not congruent with the general principles of bankruptcy law. *See In re Triangle Laboratories, Inc.*, 663 F.2d 463, 468 (3d Cir.1981) (citing *In re Butchman*, 4 B.R. 379, 381 (Bankr.S.D.N.Y. 1980) ("when a debtor's legal and equitable interests in property are terminated prior to the filing of the petition with the Bankruptcy Court that was intended to preserve the debtor's interest in such property, the Bankruptcy Court cannot then cultivate rights where none can grow"); *Talley*, 69 B.R. at 223.

■ Hence we conclude that federal bankruptcy law draws no meaningful distinction between "expired" and "terminated" residential leases and does not provide greater federal protection for lessees under residential leases, the stated terms of which have not run, even though they have been otherwise terminated. Instead the federal law allowing "unexpired" leases to be assumed calls for a determination whether a lease has ended under state law. *See, e.g., In re Escondido West Travelodge*, 52 B.R. 376 (S.D.Cal.1985); *In re Depoy*, 29 B.R. 466 (Bankr.N.D.Ind. 1983); *In re Collier*, 163 B.R. 118; *In re Sudler*, 71 B.R. 780 (Bankr.E.D.Penn.1987); *Talley*, 69 B.R. 219.[1]

B. Illinois Law

■ Since we believe state law controls here, we must examine the law of Illinois. In general, states establish various phases in the process of termination of a lease, and the point at which tenants lose their right to possession differs considerably from state to state. Accordingly, we must examine whether under Illinois law Robinson's lease had ended at the time she filed in bankruptcy—after a judgment for possession had been entered but before a writ of possession was scheduled to issue.

■ Robinson argues that her lease was "unexpired" under state law when she sought to have it assumed by the bankruptcy trustee. Robinson urges us, once again, to distinguish between the terms "expired" and "terminated" in our state law analysis. She argues that, even if federal law does not contain a meaningful difference between "expiration" and "termination," Illinois law does, and that we should recognize that distinction for purposes of lease assumption in bankruptcy.

As Robinson notes, there are in fact certain circumstances where "expiration" and "termination" do have different meanings under Illinois law. For instance, if a lease is for a "certain period," and the tenancy "expires by the terms of the lease," it is not necessary to give notice before filing an action for forcible entry and detainer. 735 Ill.Rev.Stat., Ch. 110, para. 9–213. However, notice is required when a landlord terminates the lease before the term of the lease has run. S.H.A. 735 ILCS 5/9–209 (1994). Also, if a tenant willfully holds over after the term of the lease has run, she is treated differently than a tenant who holds over after a landlord's premature termination. Thus, a landlord may be entitled to double rent from a tenant who holds over after the expiration of the lease term but not from a tenant whose lease has been terminated by the landlord prior to the expiration of the term. *See Stuart v. Hamilton*, 66 Ill. 253 (1872); *Stride v. 120 West Madison Building Corp.*, 132 Ill.App.3d 601, 87 Ill.Dec. 790, 793, 477 N.E.2d 1318, 1321 (1985). However, while

---

1. Looking to state law to determine a party's property interest is derived from the principle stated in *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) (holding that "[p]roperty interests are created and defined by state law"). In *Butner* the Supreme Court reasoned that there is no reason to treat property interests differently for bankruptcy purposes than state law normally dictates. The Court pointed out that using the same standards results in consistency, discourages forum shopping, and prevents parties from receiving "a windfall merely by reason of the happenstance of bankruptcy." *Id.* (quoting *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961)) (applying the principle to a mortgagee's right to receive rents during bankruptcy).

recognizing that Illinois courts have, on occasion, given a different meaning to "expire" or "expiration" than to "terminate" or "termination" and that those differences have resulted in corresponding variations in the application of Illinois landlord and tenant law, the differences noted by the plaintiff are not material for purposes of determining whether a lease is "unexpired" under 11 U.S.C. § 365(a).

As we have noted, there seems to be no suggestion in the bankruptcy law that we scour Illinois law for distinctions between "terminated" and "expired" unless they are relevant to the question whether there is still an assumable interest in a lease at a point in time that is material in bankruptcy. *See Talley*, 69 B.R. 219 (holding that "Tennessee law ... acknowledges differences among default, termination and expiration but the patchwork of Tennessee landlord tenant law suggests no bright line definition of 'expired' for bankruptcy purposes"). The distinctions in Illinois law between "expired" and "terminated" may be meaningful in a particular context, but there is no indication that they are intended to apply beyond that context. *See Cunningham*, 159 B.R. at 235 (finding no distinction between termination and expiration of a residential lease in Illinois law for purposes of trustee assumption).

▮▮ In Illinois, as in other states, "[t]he residential landlord tenant relationship is layers of rights which peel away during the [termination] process." *Talley*, 69 B.R. at 224. Each step must be analyzed to see at what point the lease has been fully abrogated. The general rule throughout the states is that the lease ends when the tenant is no longer entitled to possession. *See, e.g., Ross v. Metropolitan Dade County*, 142 B.R. 1013, 1015 (S.D.Fla.1992), *aff'd without op.*, 987 F.2d 774 (11th Cir.1993); *Talley*, 69 B.R. at 224. There are two steps in applying this principle. First, the landlord must have taken all the necessary procedural steps to repossess the premises. This is not, however, the same point at which the landlord merely enjoys the *right* to terminate the lease. Although the landlord may have an unconditional right to terminate the lease, he may choose not to exercise that right, thereby preserving the lease. In any event, termination cannot occur until all the essential procedural steps have actually been taken.

▮▮ Second, the lease may not be considered ended until the tenant herself no longer has legal recourse to revive the lease. *See, e.g., Ross*, 142 B.R. 1013 (lease considered terminated when both the lease termination process has been completed and no anti-forfeiture laws can still save the lease); *Collier*, 163 B.R. at 120–21 (lease considered terminated after judgment in a forcible entry and detainer action but before writ of restitution secured because the writ did "nothing to further delineate the substantive rights and liabilities of the parties under the lease"); *Talley*, 69 B.R. at 225 (lease not ended until a writ of possession has been executed because until that point under Tennessee law the tenant "has many and varied rights to upset the landlord's intent to reacquire the leasehold"). Thus, when there is a viable possibility that the tenant could still take action to preserve the lease, the lease has not been terminated. Moreover, it is not necessary that the tenant actually have taken those steps to revive the lease at the critical point when the lease is assumed by the bankruptcy trustee. *See, e.g., Talley*, 69 B.R. at 225 (noting that a lease has not ended when a tenant still has recourse to upset the landlord's course of action, but not requiring that she must have actually resorted to such recourse); *Ross*, 142 B.R. at 1015 (if judgment of possession *could* be reversed by antiforfeiture laws, then the lease would be "unexpired"). If the tenant could still take action to save the lease, requiring that she actually take it seems superfluous since the bankruptcy trustee may presumably take the same steps after assumption. In light of these principles, we must determine whether the landlord here has taken the required steps under Illinois law and whether the tenant has any recourse still available under state law.

▮▮ The complete process of evicting a tenant in Illinois involves five distinct steps. However, the occurrence or execution of all the five steps may not be necessary for the tenant to lose her right to possession. In any event, the first essential step is that the tenant must be delinquent in her rent. *See*

S.H.A. 735 ILCS 5/9–209 (1994). Second, the landlord must notify the tenant, in writing, that the rent must be paid within no less than five days. *Id.* Third, the specified time period mentioned in the notice must pass without tender of payment by the tenant. *Id.* Fourth, the landlord must sue for possession or maintain ejectment and obtain a judgment for possession. *Id.* Fifth, and finally, a writ of possession issues pursuant to the judgment for possession. The question before us is to determine where in this succession of steps the lease has been abrogated for bankruptcy purposes.

A lease certainly cannot have been terminated upon completion of only the first two steps. Obviously, more than mere delinquency is required to terminate a tenant's rights. The statute clearly directs landlords to give tenants a "second chance" by requiring that they give the tenant at least five days in which to cure the delinquency, and thus mere notice of the delinquency is not enough to end the lease.

Whether a lease may end after completion of the third step is less clear. Two district courts have addressed this issue. One concluded that a lease was ended after a tenant had received a thirty-day termination notice from the landlord but before a judgment for possession had been entered, *Cunningham,* 159 B.R. at 232–33. The other determined that the lease had terminated when a five-day notice had been sent followed by the landlord's filing of a suit for possession. *Maxwell,* 40 B.R. 231. In both *Cunningham* and *Maxwell,* the courts interpreted Illinois law as supporting the conclusion that, under S.H.A. 735 ILCS 5/9–209 (1994), a lease terminates prior to a judgment of possession. We have some doubt about this conclusion, however, on the grounds that Illinois law

may extend protection of the tenant even farther and that a lease may not end until a judgment of possession has been entered.

*Maxwell* cites several cases to support its finding that, under state law, a lease terminates prior to the entry of a judgment of possession. 40 B.R. at 236 (citing *Woods v. Soucy,* 166 Ill. 407, 47 N.E. 67 (1897); *Elizondo v. Medina,* 100 Ill.App.3d 718, 56 Ill. Dec. 301, 427 N.E.2d 381 (1981); *Elizondo v. Perez,* 42 Ill.App.3d 313, 1 Ill.Dec. 112, 356 N.E.2d 112 (1976); *Westerman v. Gilmore,* 17 Ill.App.2d 455, 150 N.E.2d 660 (1958); *Juhasz v. Haisan,* 337 Ill.App. 387, 85 N.E.2d 856 (1949)). But a close examination of these cases leads us to a possibly different conclusion, for these cases only affirm the landlord's *right* to terminate the lease once notice has been given and no rent has been paid within the allotted time. However, the cases do not explicitly determine that the lease, absent affirmative action to terminate on the part of the landlord, is abrogated at that point. *Woods,* 47 N.E. at 71; *Medina,* 56 Ill.Dec. at 302, 427 N.E.2d at 382; *Perez,* 1 Ill.Dec. at 113, 356 N.E.2d at 113; *Westerman,* 150 N.E.2d at 662. Thus the conclusion in *Maxwell* that a lease is ended prior to a judgment of possession seems questionable.

 Despite these doubts as to *Maxwell*'s holding, however, we do not question that a tenant no longer retains her right to possession *once a judgment of possession has been entered.* At this fourth step in the eviction process a landlord has surely taken the steps requisite for termination. Nor is there any recourse left for the tenant to revive the lease. Thus, absent a waiver of forfeiture by the landlord,[2] the lease may not be deemed "unexpired" beyond that point.

2. Some jurisdictions have found that if the lease may still be saved under anti-forfeiture laws, then the lease will not be considered expired for purposes of bankruptcy assumption. *See Ross,* 142 B.R. 1013. For instance, Florida anti-forfeiture laws give courts the power to grant relief against forfeiture "whenever it is just and equitable to do so ..." as long as the tenant tenders the arrears of rent with accrued interest. *Id.* at 1015.

Unlike Florida, Illinois does not have a similar anti-forfeiture law awarding such great discretion to the courts. After a judgment of posses-

sion, only the landlord is in a position to prevent forfeiture. If a landlord acts inconsistently with his "declaration of forfeiture" then he may have waived the forfeiture. *See Chicago Housing Authority v. Taylor,* 207 Ill.App.3d 821, 152 Ill.Dec. 730, 732, 566 N.E.2d 417, 419 (1990); *Housing Authority for LaSalle County v. Little,* 64 Ill. App.3d 149, 21 Ill.Dec. 25, 25–26, 380 N.E.2d 1201, 1201–02 (1978). For instance the acceptance of rent may be considered such an inconsistent act. *See Taylor,* 152 Ill.Dec. at 732, 566 N.E.2d at 419; *Little,* 21 Ill.Dec. at 25, 380 N.E.2d at 1201. But this is completely within

A Judgment of Possession of Robinson's apartment was entered on May 4th, 1993. Robinson did not file for bankruptcy until June 3rd, the day the writ of possession was to issue. This, of course, was almost a month after entry of the judgment of possession. Since Robinson sought to have her lease assumed by the bankruptcy trustee after the judgment of possession had been entered, we conclude that she did so after the lease had been abrogated (or had expired) and it was therefore not assumable under 11 U.S.C. § 365(a).

## C. Public Housing

■ Robinson next contends that a public housing lease remains viable longer than a lease of a private dwelling, and that possession by the tenant may preserve a public housing lease even if it does not preserve a private one, citing *Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 274, 89 S.Ct. 518, 522, 21 L.Ed.2d 474 (1969) and *Chicago Housing Authority v. Harris*, 49 Ill.2d 274, 275 N.E.2d 353 (1971). In *Thorpe*, the Housing Authority of the City of Durham, North Carolina brought an eviction action and received an order to have Thorpe removed from her apartment. *Id.*, 393 U.S. at 271, 89 S.Ct. at 520. The Housing Authority gave no reason for evicting Thorpe and was not required to do so at that time. Thorpe challenged the eviction on due process grounds. While the case was still on appeal, the Department of Housing and Urban Development (HUD) issued a circular requiring local housing authorities to inform tenants of the reasons for eviction and to give tenants an opportunity to reply. *Id.* at 272, 89 S.Ct. at 520. The United States Supreme Court held that the circular was to apply retroactively to a tenant still residing in the apartment pending the outcome of an eviction appeal. *Id.* at 274, 89 S.Ct. at 522. With respect to *Thorpe*, Robinson argues that the Court would not have required retroactive application of the circular if Thorpe had not retained an interest in the lease. From this, Robinson contends that it could be deduced that Thorpe's lease was not ter-

minated until Thorpe actually vacated the premises.

*Chicago Housing Authority v. Harris*, 49 Ill.2d 274, 275 N.E.2d 353 (1971), involved a similar scenario, where a HUD circular requiring an impartial hearing was issued after the tenant's eviction but before she vacated the premises. The state court determined that it was required to apply *Thorpe* and that the circular applied retroactively. *Id.*, 275 N.E.2d at 356. Because in both cases the tenants were still in possession when the circulars were issued, Robinson argues that under both federal and state law a public housing lease cannot end until a tenant is no longer in possession.

These cases do not support Robinson's contention that a lease remains viable, no matter what actions have been taken to abrogate it, until the resident has actually vacated the premises. Rather the courts in *Thorpe* and *Harris* held that special procedural protections for public housing tenants created while the tenant's eviction was still being appealed could be applied to that eviction. The housing authorities in these cases were required to revisit the eviction process *in spite of* the fact that it had already been completed prior to the issuance of the new circular. But the reason for this requirement was that new procedural protections were created while the tenant was challenging her eviction, not the fact that the tenant remained in possession. As the Court explained, "the circular should be applied to all tenants still residing in McDougald Terrace . . . not only because it is designed to insure a fairer eviction procedure in general, but also because the prescribed notification is essential to remove a serious impediment to the successful protection of constitutional rights." 393 U.S. at 283, 89 S.Ct. at 527.

While the fact that the tenant was still in possession may have played some role in the Court's decision to apply the new provisions retroactively, that fact cannot be construed to extend an interest in a lease (or the right to have the lease assumed by a bankruptcy

the control of the landlord. Unlike in Florida, the tenant, absent error or change of heart by the

landlord, cannot revive the lease.

trustee) to any public housing tenant whose lease has been validly terminated but who has not yet been forcibly evicted. Robinson's eviction is not being challenged here. She was not denied any procedural protections; she is simply attempting to assume a validly terminated lease under the bankruptcy code. The *Thorpe* Court's decision to apply the circular to "any tenant still residing in [the] projects on the date of this decision" does not give her that ability. 393 U.S. at 274, 89 S.Ct. at 522.

We note that under ordinary landlord and tenant law, a tenant's status as a resident of public housing generally does in some respects enhance her rights. *In re Sudler,* 71 B.R. 780, 786 (Bankr.E.D.Penn.1987). However, this enhancement arises from the additional layers of procedures landlords must take to terminate a lease. *Id.* ("The governmental agency which owns a public housing premises must adhere strictly to both federal Regulations and to pertinent state law before it can succeed in terminating the rights of such tenants, or issues of constitutional dimension arise."). Unlike the tenants in *Thorpe* and *Harris,* Robinson makes no argument that any federal regulatory or state law procedure designed to protect the interest of public housing tenants was not followed in her case, or that new laws have been recently adopted which provide new procedural protections.

Generally, courts have not treated public housing tenants differently in determining when a lease is "unexpired" for purposes of lease assumption under 11 U.S.C. § 365. *Talley,* 69 B.R. 219 (making no distinction between housing subsidized by the government and other types of housing, and accordingly applying state law to determine bankruptcy assumption of lease); *Cunningham,* 159 B.R. at 233 (holding that a tenant is not entitled to more protection in determining lease termination simply because she is a tenant in a federally subsidized housing unit). We acknowledge that HUD may enact regulations which afford more protection to public housing residents, sometimes creating additional steps the landlord must take before evicting a resident. But we cannot infer from this the conclusion that Robinson asks

us to acknowledge—that a lease has not yet been terminated in the case of a public housing resident as long as the tenant is still in possession. Robinson makes no argument that requisite procedures were not followed, and thus has no claim for special treatment as a public housing tenant.

### D. Discrimination

 Finally, Robinson contends that she has been discriminated against in violation of § 525(a) of the Bankruptcy Code which states

> a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, discriminate with respect to such a grant against ... a person that is or has been a debtor under this title ... solely because such bankrupt or debtor is or has been a debtor under this title ...

11 U.S.C. § 525(a).

Robinson's claim that her lease termination was a product of discrimination against her as a debtor in bankruptcy has no merit. In order for CHA to have discriminated against Robinson because of her bankruptcy status, it must have been aware of that status. Robinson did not file in bankruptcy until the day a writ of possession was scheduled to issue. CHA had completed the lease termination process long before this, and thus its actions could not have been motivated by Robinson's bankruptcy.

### III. Conclusion

For these reasons, we hold that Robinson's lease has ended under Illinois law and is not assumable under 11 U.S.C. § 365(a). We therefore affirm the judgment of the district court.