WINNING MOVES, INC., Plaintiff-Appellant, v. HI! BABY, INC., Defendant-Appellee (Vicki Nichols, Contemnor-Appellant).

Second District   No. 2—92—0075

Opinion filed December 15, 1992.

Thomas D. Chase, of Elgin, for appellants.

Michael P. Herrmann, of Nolan & Herrmann, of De Kalb, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The appellants, Winning Moves, Inc. (Winning Moves), and Vicki Nichols (Nichols), are appealing from a ruling which vacated the service of process on an agent of Hi! Baby, Inc., and which found Nichols in contempt of court. The issues on appeal are (1) whether there was clear and convincing evidence that proper service was not made by Nichols; (2) whether the court improperly considered *ex parte* testimony in determining whether service was made; and (3) whether Nichols was denied due process in the proceedings which led to her direct criminal contempt conviction.

On July 3, 1991, Winning Moves filed a small claims complaint against Hi! Baby, Inc., seeking judgment for $828.37 for the nonpayment of merchandise. On August 7, 1991, the court ordered a summons to be served on Hi! Baby, Inc. On August 13, 1991, the summons was marked returned, allegedly served by Nichols upon May Riad-Sakr (Sakr), an agent of Hi! Baby, Inc. On September 22, 1991, Sakr was allegedly served again by Nichols, with a citation to discover assets and an order to appear in court on October 16, 1991. Sakr failed to appear in court on October 16, and the court issued a rule to show cause against Sakr for her failure to appear. On October 21, 1991, according to Nichols' affidavit of return, she served Sakr with a rule to show cause and a copy of the complaint. On November 20, 1991, upon Sakr's failure to appear pursuant to the rule to show cause, the court entered a writ for body attachment against Sakr and set bond.

On December 9, 1991, the court reduced Sakr's bond to a recognizance bond and set the matter over to December 18, 1991. Also on December 9, the court heard Sakr's testimony that she was not served with summons by Nichols. Based upon those statements, the court issued a rule to show cause against Nichols, the process server, "to show cause why she claims service of various documents upon" Sakr. The rule further ordered that the attorney for the plaintiff, Thomas Chase, produce Nichols in court on December 18, 1991.

On December 18, 1991, the rule to show cause against Nichols came on for hearing before the Honorable John W. Countryman. At that hearing, Nichols testified that she was a process server and that she was given various documents to serve on Sakr. Nichols stated that on August 13, 1991, at 2 p.m., she served Sakr with a summons at Sakr's residence. She further stated that on September 22, 1991, at 9 p.m., she served a citation to discover assets at Sakr's residence. Nichols also testified that on October 21, at 10:30 a.m., she served Sakr at her home with a rule to show cause. Nichols identified Sakr in court as the woman whom she served on all three of those occasions. On cross-examination, Nichols testified that she made an independent judgment of Sakr's appearance every time she served her with process and that her affidavits of return reflected those observations.

On the three return affidavits, Nichols described Sakr as 5 feet 7 inches tall, weighing 145 pounds, approximately 31 years old, and with blond hair. On cross-examination, Nichols estimated that Sakr was 5 feet 5 inches or 5 feet 5½ inches tall, 135 pounds, approximately 31 years old, and had dirty blond hair.

Sakr testified that she was 27 years old, 5 feet 3 inches tall, and 110 pounds. She testified that she was served with only one document by Nichols, a notice of a motion to change the name of the complaint from "Hi! Baby" to "Hi! Baby, Inc.," and that there was no complaint attached to it. Sakr further testified that she was not served with any other summons or complaints by Nichols. She testified that on September 22, 1991, she was entertaining guests at her home and was not served with papers on that date. Sakr also testified that on October 21, 1991, at 10:45 a.m., she was at work at Northern Illinois University and was not served with a rule to show cause on that date.

In its ruling, the court noted that it originally issued the rule to show cause against Nichols because there were apparent discrepancies in Nichols' affidavits of return. The court explained that Nichols' estimate of Sakr's age was a fairly easy mistake in this case and that it was reasonable to consider Sakr's hair as being dirty blond, but "to say that she's 5'7 when she's *** 5'3" *** that's pretty hard to mis-

construe somebody [*sic*] by four inches." The court also expressed doubt concerning Nichols' estimate of Sakr's weight at 145 pounds, observing that "[s]he's a bit of a thing." The court additionally noted that "the deputy sheriff who brought her over said to me 'there's no way, Judge, that she could qualify at 145 pounds.' " The judge ordered Sakr's service of process vacated and held Nichols in contempt of court, finding that she lied on her affidavits relating to service of process on Sakr. The judge barred Nichols from serving process in all future cases that appear in front of him.

■ The appellants first argue that the trial court erred because it failed to apply the "clear and convincing" evidence standard in determining the validity of Sakr's service of process, and thereby arrived at a decision against the manifest weight of the evidence. The appellants failed to cite any language of the court, nor were we able to find any indication in the record, which demonstrates that the court used the wrong evidentiary standard in determining the validity of Sakr's service of process. We will therefore assume that the court used the correct evidentiary standard, and we narrow this issue to whether there was clear and convincing evidence to support the court's ruling on the validity of Sakr's service of process. See *Mid-America Federal Savings & Loan Association v. Kosiewicz* (1988), 170 Ill. App. 3d 316, 324.

■ The object of service is to notify a party of pending litigation and thus secure his presence. (*Mid-America*, 170 Ill. App. 3d at 324.) In the case of personal service, the return of summons is *prima facie* proof of proper service which can only be overcome by clear and convincing evidence, and the court is required to indulge in every reasonable presumption in favor of the return. (170 Ill. App. 3d at 324.) Uncorroborated testimony of the party upon whom service purports to have been made is not considered clear and convincing evidence. *Isaacs v. The Shoreland Hotel* (1963), 40 Ill. App. 2d 108, 111.

■ It is true that a return of service cannot be set aside merely upon the uncorroborated testimony of the party upon whom service was made. (*Isaacs*, 40 Ill. App. 2d at 111.) However, in the instant case the court was in a privileged position. It not only could hear the testimony, but it also could view Sakr and compare Nichols' earlier description in her affidavits against its own impressions of Sakr's appearance.

It is the proper function of the judge to determine the credibility of the witnesses. (*Ford v. Continental Illinois National Bank & Trust Co.* (1974), 18 Ill. App. 3d 166, 171.) We will not substitute ourselves for the trial judge in determining whether Sakr's appearance in

court adequately corroborated her claim regarding her lack of service given the discrepancies in Sakr's affidavits. (18 Ill. App. 3d at 171.) We find sufficient evidence to support the court's ruling on the validity of Sakr's service of process.

The appellants also allege that the court improperly considered *ex parte* testimony of the deputy sheriff in reaching its ruling and argue that the court should be reversed on this basis. We note that the judge referred to the deputy sheriff's observation that "there's no way *** [Sakr] could qualify at 145 pounds."

Considering the record as a whole, we do not find the judge's remark about the deputy sheriff provides a sufficient basis to reverse the court's ruling on this issue. This case is distinct from *Drovers National Bank v. Great Southwest Fire Insurance Co.* (1977), 55 Ill. App. 3d 953, 957-58, to which the appellants cite. There, the court specifically stated it "[took] into account" evidence outside of the record. Here, in contrast, the court had an opportunity to view Sakr's appearance in the court. Additionally, it heard Sakr's own testimony that she weighed only 110 pounds.

The appellants next argue that Nichols was denied due process. They assert, in part, that no petition for a rule to show cause was filed against her, that she was entitled to an opportunity to interpose an answer, and that she was entitled to receive a full hearing on her contempt charge.

■ We first note that although the court found Nichols to be in indirect criminal contempt, we find that the record more aptly states a charge of direct criminal contempt. Civil contempt proceedings have two fundamental attributes: (1) the contemnor must be capable of taking the action sought to be coerced, and (2) no further contempt sanctions are imposed upon the contemnor's compliance with the pertinent court order. (See *In re Marriage of Betts* (1990), 200 Ill. App. 3d 26, 44.) Neither of these attributes is present in the instant case.

■ In contrast to the coercive purpose of civil contempt sanctions, the reasons for imposing punishment for criminal contempt are much the same as the rationale for punishing other types of misdemeanor criminal conduct: "retribution, deterrence, and vindication of the norms of socially acceptable conduct." (*Betts*, 200 Ill. App. 3d at 44.) Criminal contempt punishes past acts and may address disrespectful, disruptive, deceitful and disobedient acts which affect judicial proceedings. (*Betts*, 200 Ill. App. 3d at 45.) We find that the contempt in the instant case was criminal contempt; the court's ruling was intended to punish Nichols' past act of allegedly knowingly filing false affidavits of service and to deter her from doing so in the future. See

*People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 60-62; *In re Estate of Melody* (1969), 42 Ill. 2d 451, 452-53.

Contempt is also categorized by whether it is direct or indirect. Direct contempt is contemptuous conduct which occurs in the presence of a judge. (*Betts*, 200 Ill. App. 3d at 47.) There is also a subcategory of direct contempt consisting of contemptuous acts not personally seen by a judge, but which take place in an integral or constituent part of the court; that subcategory includes, for instance, knowingly filing false documents with the clerk of the court that are calculated to "hinder or obstruct a court in its administration of justice." (See *Hogan*, 67 Ill. 2d at 59-60.) These acts are deemed to have occurred within the constructive presence of the court. (*Betts*, 200 Ill. App. 3d at 48.) Nichols' alleged filing of false affidavits falls under this subcategory of direct contempt.

■ Generally, a finding of direct criminal contempt may be made in a summary manner, and the contemnor is not entitled to the procedural rights which are ordinarily mandatory in criminal proceedings. (See *Betts*, 200 Ill. App. 3d at 49-52.) However, when the punishment for a particular course of criminally contemptuous conduct exceeds the parameters of punishments normally imposed for misdemeanors, and the punishments are not imposed immediately after the occurrence of the contemptuous conduct, the contemnor is entitled to the procedural rights that conform to the constitutionally mandated procedures required in other criminal proceedings. (See *Betts*, 200 Ill. App. 3d at 48-50, 58.) These rights include notice, a reasonable opportunity to defend, the assistance of counsel, the right to be proven guilty beyond a reasonable doubt and the right not to be compelled to testify against oneself. (See *Marcisz v. Marcisz* (1976), 65 Ill. 2d 206, 209-10.) The traditional test for determining whether a charged offense is a misdemeanor is whether the penalties exceed $500 or six months' imprisonment, although the test is subject to some judicial discretion. (See *Betts*, 200 Ill. App. 3d at 50.) In the instant case, the punishment imposed substantially deprives Nichols of her means of livelihood as a process server. We, therefore, find that her punishment was greater than that normally imposed for a misdemeanor and raised an entitlement to constitutional protection required in other criminal proceedings.

■ The record shows that Nichols' notice consisted merely of a rule to show cause why she claimed "service of various documents upon Sakr." There was no mention or notice in the rule concerning a contempt proceeding. (See *In re Marriage of Carpel* (1992), 232 Ill. App. 3d 806, 823.) Furthermore, Nichols was called to testify before

the court in violation of her right not to incriminate herself, and she was not given the opportunity to interpose an answer to the charge of contempt. (See *Marcisz*, 65 Ill. 2d at 209-10.) While we make no judgment as to whether the punishment imposed by the court here was inappropriate, we find that the defendant was denied her constitutional rights. See *People v. Marcisz* (1975), 32 Ill. App. 3d 467, 473.

We also will not penalize Nichols for failing to object to the lack of due process earlier in the proceedings. This is not an instance where it would be appropriate to find waiver of her due process rights because they did not attach to the contempt proceeding until the judge imposed a sentence with a penalty greater than that generally imposed for a misdemeanor offense. (See *Marcisz*, 65 Ill. 2d at 209-210.) A waiver of constitutional rights is normally not upheld in the absence of any indication that the defendant was aware of the rights he was forfeiting. (See *People v. Lester* (1988), 165 Ill. App. 3d 1056, 1058.) Here, at the time of the contempt proceedings, Nichols could not make a knowing waiver of her due process rights. She had not yet been given notice that those rights had attached.

Alternatively, we note also that the above-required procedural rights also attach to proceedings for indirect criminal contempt and should have been granted to Nichols on that basis as well. See *Betts*, 200 Ill. App. 3d at 58.

For the above reasons, we affirm the judgment as it relates to the vacatur of Sakr's service of process, and we reverse the judgment of the circuit court of De Kalb County as it relates to Nichols' contempt and remand for a new hearing. In remanding the case for further proceedings we observe that, given the sufficiency of proof presented at the trial, we find no double jeopardy barrier to retrial. See *People v. Taylor* (1979), 76 Ill. 2d 289.

Affirmed in part; reversed and remanded in part.

UNVERZAGT and BOWMAN, JJ., concur.