**Lucretia CUNNINGHAM,
Debtor–Appellant,**

**v.**

**LIFELINK CORPORATION, Appellee.**

**No. 93 C 1380.**

United States District Court,
N.D. Illinois, E.D.

Aug. 24, 1993.

David Shu-fang Yen, Legal Assistance Foundation of Chicago, Chicago, IL, for Lucretia Cunningham.

Nemia B. Lebrilla, Katten, Muchin & Zavis, Chicago, IL, for Lifelink Corporation.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Before us is debtor-appellant Lucretia Cunningham's (Cunningham) appeal from a final order of the bankruptcy court granting appellee Lifelink Corporation's (Lifelink) motion for relief from automatic stay. Cunningham maintains that the bankruptcy court erred in finding that the debtor-appellant's lease had been validly terminated prior to the date Cunningham filed her petition in bankruptcy. In the alternative, Cunningham argues that even if the lease was considered terminated prior to the filing of her petition in bankruptcy, the bankruptcy court erred in finding that she could not assume her unexpired lease. This court has jurisdiction under 28 U.S.C. § 158(a). For the reasons stated below, the debtor-appellant's appeal is denied and the bankruptcy court's order is affirmed.

## FACTS

On October 15, 1991, Lifelink, as landlord, and Cunningham, as tenant, entered into a written lease for appellant's residential occupancy in an apartment complex known as North Orchard Place. North Orchard Place is a low-income housing project for the physically handicapped under section 202 of the Housing Act of 1959, as amended. Lifelink therefore receives housing assistance payments from the U.S. Department of Housing and Urban Development (HUD).

On August 7, 1992, Lifelink sent Cunningham a letter entitled "Landlord's Ten Days' Notice." Lifelink sent that notice to appellant by messenger (who slid the notice under Cunningham's apartment door) and by U.S. mail. Lifelink's counsel simultaneously served a copy of the notice on Cunningham's counsel. The letter notified Cunningham that past rent of $598 was due and that failure to pay this amount within ten days would result in termination of the lease. Several days later appellant informed Edward Zukosky, then property manager of Lifelink, that she had received the notice and would attempt to pay the $598 within the requisite time period. On

or about August 14, 1992, Lifelink's and Cunningham's counsel discussed the amount of rent due and Cunningham's counsel stated that partial payment of $500 would be sent to Lifelink pursuant to the notice. Cunningham's counsel enclosed $500 in a letter sent to Lifelink on August 14, 1992. The letter stated that Cunningham would pay the balance of $98 directly to Lifelink.

On or about August 19, 1992, Lifelink sent a letter entitled "Landlord's 30–Days' Termination Notice" to Cunningham via U.S. mail and personal delivery. This letter advised appellant that her tenancy would terminate on September 19, 1992, because she failed to fully comply with the earlier notice. The letter further stated that if Cunningham remained on the premises after September 19, 1992, then Lifelink would seek judicial action, at which time she would have the opportunity to present a defense.

Cunningham did not vacate the premises on September 19, 1992. On September 24, 1992, Lifelink filed a forcible and detainer action against Cunningham in the Illinois court. Shortly thereafter Lifelink filed its motion for summary judgment. Cunningham was given until December 1, 1992, to respond and/or file a cross-motion for summary judgment.

On December 1, 1992, Cunningham filed for bankruptcy pursuant to Chapter 13 of the Bankruptcy Code. She claimed her leasehold interest as exempt pursuant to Illinois law. Lifelink filed its motion for relief from automatic stay on December 30, 1992. On February 17, 1993, after the parties provided written briefs, the bankruptcy court delivered an oral opinion granting Lifelink's motion on the basis that appellant's lease was validly terminated pursuant to Illinois law prior to Cunningham's petition for bankruptcy. On February 22, 1993, the bankruptcy court entered a written order holding that the lease was not part of Cunningham's estate and thereby granting Lifelink's relief from the automatic stay. Debtor-appellant filed her notice of appeal in this court on March 2, 1993.

## DISCUSSION

Cunningham maintains that the bankruptcy court's decision was in error for two reasons. First, she argues that the bankruptcy court erred in finding that her lease had been terminated when her petition in bankruptcy was filed. Second, she maintains that even if the lease was terminated prior to the filing of the petition, she can still assume the lease because it is an "unexpired" lease of residential real property that is part of her bankruptcy estate and assumable pursuant to 11 U.S.C. § 365.

### I. Termination of the Lease

■ The critical question before this court is whether Cunningham's lease was terminated prior to the filing of her petition in bankruptcy. The parties agree that if the lease was not terminated when Cunningham filed her petition, then the lease would be part of her estate and Cunningham would be able to cure the default as part of her Chapter 13 plan. Appellant argues that the bankruptcy court's finding—that the lease had been terminated—was incorrect for two reasons. First, Cunningham maintains that her lease, which is federally subsidized, does not terminate until a judgment has been entered, and since no judgment had been entered here against her, her lease had not terminated. The issue is whether the tenant of federally subsidized housing in Illinois has a right, superior to the rights of other tenants, to obtain the protection of the bankruptcy laws for a leasehold interest at any time prior to a judicially ordered eviction. Second, she argues that her lease was not terminated because the notices sent by the landlord did not comply with her lease or federal, state and local law. We address each of those arguments separately.

### A. Requirements for Termination of a Federally Subsidized Lease

In order to determine whether Cunningham's lease was terminated, we turn to the relevant requirements for termination of a lease, as stated in the lease and as mandated under federal, Illinois and local law.

Under each of those authorities the landlord may terminate the lease if the tenant fails to pay his or her rent,[1] so long as the landlord abides by the applicable notice requirements.

The bankruptcy court and Lifelink rely heavily on *In re Maxwell*, 40 B.R. 231 (N.D.Ill.1984). This court held in *Maxwell* that under Illinois law a lease is terminated if, after the landlord sends the required notice to the tenant, the tenant fails to timely cure the default. 40 B.R. at 236. In fact, this court noted in *Maxwell* that while in some states it is necessary for the landlord to obtain a judgment for possession in order to terminate the lease, that is not the case in Illinois. *Id.* In Illinois, the statutory notice procedure for terminating a lease ends the contractual relationship between the parties. *Id.* This court's conclusion in *Maxwell* is consistent with the language in the Illinois statute, the Chicago landlord-tenant ordinance and the federal regulation.

■ Cunningham maintains that *Maxwell* does not apply here since in this case the lease is federally subsidized and concerns residential property. In essence, Cunningham argues that a tenant in a federally subsidized housing unit has greater rights and is given additional protection in that his or her lease is not terminated until a final judgment has been entered and the tenant has been dispossessed pursuant to that judgment. In support of her argument, plaintiff relies heavily on *Thorpe v. Housing Authority of the City of Durham*, 386 U.S. 670, 87 S.Ct. 1244, 18 L.Ed.2d 394 (1967), *Housing Authority of County of Franklin v. Moore*, 5 Ill.App.3d 883, 284 N.E.2d 456 (1972), and *Chicago Housing Authority v. Harris*, 49 Ill.2d 274, 275 N.E.2d 353 (1971). However, none of these cases stands for the proposition that a tenant in a subsidized housing unit is entitled to a judicial hearing and an entered judgment before his or her lease can be terminated. In fact, those cases support this court's position that the rights of such a tenant are mandated by the relevant statute. The HUD regulations (and applicable Illinois law) do not, however, provide the right to a judgment before a lease can be terminated. As stated by the court in *Moore*, the HUD tenant is not entitled to a hearing or the fulfillment of due process requirements until the forcible entry and detainer suit is filed and the eviction process under way. 284 N.E.2d at 459–60. Plaintiff's cited authorities require the landlord to follow the pertinent law when going about the termination and eviction process and further emphasize that a HUD tenant does have the right to continued *occupancy* until he or she is afforded due process and (as mandated by the HUD regulations) a judicial hearing is held and judgment entered. It is critical to note the distinction made in the federal regulations between an eviction of a tenant verses the termination of a lease. Plaintiff is correct in that a tenant in subsidized housing has greater rights; however, the right to a judicial hearing prior to termination of the lease is not one of those rights. Although HUD regulations state that a landlord may not *evict* a tenant except by judicial notice, the regulations make no mention of a tenant's right to judicial action prior to *termination* of the lease.

We need not discuss Cunningham's other arguments in support of her position that the lease was not terminated because a judgment had not been entered. The *Maxwell* decision either addresses those arguments (and it is not necessary to recite

1. According to the federal regulations relating to HUD-owned projects, a lease is terminable by the landlord upon the following grounds: (1) material noncompliance with the rental agreement; (2) material failure to carry out obligations under any state landlord or tenant aet; or (3) other good cause. 24 C.F.R. 247.3(a). The regulations list "nonpayment of rent" as a substantial violation which constitutes "material noncompliance" of the lease. 24 C.F.R. 247.-3(c)(4).

Similarly the relevant Illinois statute and the Chicago residential landlord-tenant ordinance state that the landlord may terminate the lease if the tenant fails to pay any unpaid rent after the landlord has given the requisite notice. *See* 735 ILCS 5/9–209; Chicago Residential Landlord and Tenant Ordinance, ch. 5–12–130. The lease states that the landlord's right to terminate the agreement is governed by federal regulations.

them again here), and/or those arguments fail because, as discussed above, a tenant in a HUD project does not have greater rights than those mandated in the regulations and statutes.[2] Appellant's lease is terminated under both state and federal law and is not property of the estate. *Maxwell*, 40 B.R. at 236.

### B. Notice Requirements

■ To validly terminate a lease in Illinois, a landlord must comply with the notice requirements as stated in the lease and as mandated under local, state and federal law. The notice requirements are twofold. First, there are rules concerning the contents and the timing of the termination notice. Second, there are rules regarding the manner of service of the termination notice.

### 1. Contents and Timing of the Termination Notice

■ This court has reviewed the applicable notice provisions in the lease, the Illinois and federal statute, and in the Residential and Landlord Tenant Ordinance.[3] Lifelink's letters to Cunningham clearly comply with all requirements mandated in each of those authorities. Lifelink sent two letters to Cunningham. The first letter, dated August 7, 1992, informed Cunningham of the rent due and provided her with ten days to cure the default. The second letter, dated August 19, 1992, was entitled, "Landlord's 30–days' Termination Notice" and stated the date the lease would terminate, and the reason for termination.

Cunningham argues that the August 19, 1992, notice was defective since it did not provide a notice of right-to-cure, and maintains that the August 7, 1992, notice was defective because it was waived by the second notice (the August 19th letter) and because it did not specify a date that the tenancy would be terminated.[4] Cunningham's arguments are not persuasive. The letters more than adequately provided appellant with notice, including stating how Cunningham had allegedly violated the lease, that Cunningham could cure her default, and that she would be able to present a defense should there later be a hearing. Again, we have reviewed the applicable notice provisions and agree with the bankruptcy court in that Lifelink was in compliance with those rules.

---

**2.** For instance, Cunningham raises due process concerns. According to the Illinois statute and the federal regulation, a subsidized tenant cannot be deprived of her right to continue living in her residence without a judicial hearing. In accordance with the right to due process, the benefit of the right to occupy the premises does not terminate until judgment. As noted by the *Maxwell* court, "[o]nce a lease is terminated prior to the intervention of bankruptcy, the landlord-tenant relationship is gone *regardless* of the protection of the right to possession." 40 B.R. at 237 (citation omitted) (emphasis added).

**3.** The relevant provisions are as follows:

Illinois Statute: "A landlord or his or her agent may, any time after rent is due, demand payment thereof and notify the tenant, in writing, that unless payment is made within a time mentioned in such notice, not less than 5 days after service thereof, the lease will be terminated." 735 ILCS 5/9–209.

Lease/federal regulation: "The landlord's determination to terminate the tenancy shall be in writing and shall: (1) State that the tenancy is terminated on a date specified therein; (2) state the reasons for the landlord's action with enough specificity so as to enable the tenant to prepare a defense; (3) advise the tenant that if he or she remains in the leased unit on the date specified for termination, the landlord may seek to enforce the termination only by bringing a judicial action, at which time the tenant may present a defense; and (4) be served on the tenant in the manner prescribed by paragraph (b) of this section. 24 C.F.R. 247.4(a); *see also* Lease ¶ 8(f).

Code: "If there is a material noncompliance by a tenant with a rental agreement or with Section 5–12–040 the landlord of such tenant's dwelling unit may deliver written notice to the tenant specifying the acts and/or omissions constituting the breach and that the rental agreement will terminate upon a date no less than 10 days after receipt of the notice, unless the breach is remedied by the tenant within that period of time. If the breach is not remedied within the 10 day period, the residential rental agreement shall terminate as provided in the notice...." Ordinance, § 5–12–130(b).

**4.** The August 7th notice states that if payment is not made "on or before ten (10) days from date of receipt of this notice, your possession of the described premises will be terminated."

The August 19th notice states that the tenancy shall "terminate on September 19, 1992."

### 2. Manner of Service of Termination Notice

■ The August 7, 1992, notice was sent to Cunningham by U.S. mail and by messenger, who slid the letter under Cunningham's door. The notice was simultaneously served on Cunningham's counsel. Cunningham argues that the August 7th notice was defective because it was not properly served pursuant to § 9–211 of the Illinois Code of Civil Procedure.[5] Section 9–211 states:

> Any demand may be made or notice served by delivering a written or printed, ... copy thereof to the tenant, or by leaving the same with some person of the age of 13 years or upwards, residing on or in possession of the premises; or by sending a copy of the notice to the tenant by certified or registered mail, with a returned receipt from the addressee; and in case no one is in actual possession of the premises, then by posting the same on the premises.

735 ILCS 5/9–211.

■ The critical factor with respect to any notice requirement is that the party be informed of the action or claim against him or her. *Vole, Inc. v. Georgacopoulos,* 181 Ill.App.3d 1012, 131 Ill.Dec. 17, 22, 538 N.E.2d 205, 210 (1989). Cunningham does not claim that she did not receive the letter (and it is apparent from the facts that she received the notice not long after it was delivered to her), but argues that because § 9–211 was not strictly complied with the first notice was defective. Cunningham was in contact with the building manager to discuss the letter and her delinquent rent several days after the notice was delivered. Furthermore, Cunningham's counsel was served with notice on August 7, 1992, and on or about August 14, 1992, had discussions with Lifelink's counsel regarding Cunningham's payment of the $598 in rent. In light of the circumstances (including the fact that Cunningham received actual notice), Cunningham was not prejudiced by the manner of service and therefore we hold that the notice was not defective. *Id.*

## II. Assumption of the Lease

■ Cunningham argues that, even if her lease was terminated prior to the filing of her bankruptcy petition, she can still assume the lease because it is an unexpired lease of residential real property. In essence, appellant argues that there is a difference between termination verses expiration of a lease, and maintains that although her lease may have been terminated it did not expire, and therefore it is assumable pursuant to 11 U.S.C. § 365. We disagree. Illinois courts do not make a distinction between the termination and expiration of a lease. The Illinois statute states that if "the tenant shall not, within the time mentioned in such notice, pay the rent due, the landlord may consider the lease ended." 735 ILCS 5/9–209. And, as stated by this court in *Maxwell,* "the termination before bankruptcy of a lease pursuant to its terms and applicable State law results in its expiration, even if, as is the case here, the tenant remains in possession as a tenant at sufferance and the landlord has instituted but not yet concluded an eviction proceeding." 40 B.R. at 237 (citation omitted). When the lease was terminated, it expired, even though the full-term expiration date would have otherwise been later. Cunningham could not assume the lease as part of her Chapter 13 plan.[6] *See Maxwell,* 40

---

5. Cunningham does not dispute that the August 19th notice was properly served. In addition, we point out that according to the lease and federal regulation service can be made by placing the notice under or through the door, if no adult answers the door at the leased dwelling unit.

6. In addition appellant argues that because her lease contains an automatic renewal provision, it can never expire by its own terms. This argument does not make much sense since, under circumstances such as these, a lease would never be capable of expiring. Appellant does not cite any Illinois law to support her position and, given the language of the statute and applying a common-sense approach, the lease term expires upon termination according to Illinois law.

Appellant also raises an equitable argument, requesting that this court reverse the termination under an anti-forfeiture doctrine. Cunningham argues that a "tenant who has forfeited substantial property rights through a lease termination can reverse that forfeiture in a court

B.R. at 238 (holding that a lease is not assumable if terminated before declaration of bankruptcy). The bankruptcy court's decision and order is affirmed.

of equity if the tenant is willing and able to do equity by compensating the landlord for all of its costs and expenses." As admitted by Cunningham, there is no Illinois statute that allows a court to reverse a forfeiture in the event a tenant fails to fully comply with a default notice. And, given the facts of this case, appellant is not entitled to equitable relief. We stress that Lifelink gave Cunningham the opportunity to cure her default in the August 7th notice, and further point out that appellant will have the opportunity to present any defense in the hearing before the Illinois court. *See also Maxwell,* 40 B.R. at 238 (stating that protectible equitable interest stemming from continued occupancy of premises is not sufficient to revive terminated lease).