**In re Sylvester GANT, Debtor.**

**In re Tyrone W. McDONALD, Debtor.**

**Bankruptcy Nos. 96 B 14756, 96 B 16064.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 7, 1996.

Lawrence D. Wood, Legal Assistance Foundation of Chicago, Chicago, IL, for Movant or Plaintiff.

Gerald Mylander, Office of Standing Chapter 13 Trustee, Chicago, IL.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

These matters come before the Court on the motions of the Chicago Housing Authority ("CHA") to modify the automatic stay in 11 U.S.C. § 362(a), the respective responses of Sylvester Gant and Tyrone W. McDonald (collectively the "Debtors") in opposition thereto, and the confirmation of the Debtors' Chapter 13 plans. Each Debtor seeks to assume his lease with CHA as "unexpired" pursuant to 11 U.S.C. §§ 365(b) and 1322(b)(7). In both cases, the Debtors are attempting to use their Chapter 13 plans to save their low rent subsidized leases and retain possession of the subject premises. CHA contends the leases were properly terminated prepetition under applicable Illinois and federal law and, thus, are not assumable under the Bankruptcy Code. The motions and plans at bar involve common questions of law and similar, though not identical, factual scenarios and therefore have been consolidated for the purpose of this Opinion only.

For the reasons set forth below, the Court concludes that the lease between CHA and Gant was properly terminated prepetition, but by subsequent acceptance of a later tendered current rent payment from Gant, CHA has waived its termination of the lease. Therefore, 2CHA's motion is denied, Gant's plan is confirmed, and the lease is assumed under §§ 365(b) and 1322(b)(7). With respect to the lease between CHA and McDonald, the Court concludes that the preponderance of the evidence adduced at trial demonstrated that the lease was terminated prepetition. Therefore, the lease is not assumable under §§ 365(b) and 1322(b)(7). CHA's motion to modify the stay is granted as to McDonald, and his plan will not be confirmed.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. They constitute core proceedings under 28 U.S.C. § 157(b)(2)(G), (L), and (M).

### II. FACTS AND BACKGROUND

Most of the material facts are uncontested. Both Debtors reside in low rent subsidized housing and had entered into written leases with CHA as their landlord, for initial terms of one year, automatically renewable under

certain terms and conditions that are not in dispute here. Gant's lease required him to pay a monthly rental of $115.00 for his apartment. McDonald's lease required him to pay $103.00 per month for his apartment. Both Debtors fell behind on their rent payments for several months. This in turn prompted CHA to issue and serve landlord's notices and demands for rent to both Debtors, by which CHA demanded payment in full of the rental arrearage claimed due under both leases. What followed after issuance of the notices differed in each case. Therefore, it is helpful at this point to discuss the material facts disclosed from the pleadings in both cases and at trial in McDonald's case.

### A. *Gant's Case*

CHA's notice to Gant demanded payment of back rent in the sum of $515.50, and was personally served on him on December 13, 1995. Gant does not dispute that personal service of that notice was properly made on him. On January 17, 1996, however, he mailed CHA a money order for $630.00 to cover the past due rent for prior months, plus rent for January 1996. CHA's supervisor of tenant accounting stated by affidavit that his office received that money order around February 1, 1996, but rejected it because the fourteen day notice period had expired; the amount of the money order exceeded the amount demanded in the notice; and CHA had commenced state court proceedings to evict Gant. CHA filed a forcible entry and detainer complaint in the Circuit Court of Cook County, Illinois on January 26, 1996. The supervisor's affidavit further states that CHA later accepted a subsequent money order from Gant for $125.00 after returning the first one to its manager for the subject apartment building on February 6, 1996. Gant's affidavit states that on February 5, 1996, he mailed the second money order for the February rent and laundry tokens. He further states that on February 9, 1996, the building manager returned the first money order to him, but not the second one.

Before CHA was able to obtain an order from the state court for possession of the premises, Gant filed his Chapter 13 petition

and plan. The plan proposes to continue to make lease payments to CHA as they accrue, assume the lease, and through the plan payments made to the Standing Chapter 13 Trustee (the "Trustee"), cure the prepetition lease arrearage.

CHA has moved to modify the automatic stay of § 362(a) and objects to any assumption of the lease, asserting that the lease had been properly terminated prepetition in accordance with state and federal law. Similar to most "save the home" Chapter 13 plans involving delinquent home mortgages, utilizing the benefits of 11 U.S.C. § 1322(b)(5), Gant's plan is an attempt to "save the apartment," utilizing the benefits of §§ 365(b) and 1322(b)(7).

The Trustee indicated at the confirmation hearings on September 18, 1996, that but for the contested motions of CHA, he was recommending each plan for confirmation, although Gant was two plan payments delinquent. Subsequently, the Trustee advised the Court and counsel for the Debtors by way of letter that Gant had made a $100.00 plan payment on September 25, 1996 and is current through September 1996. His next payment is due on October 7, 1996.

### B. *McDonald's Case*

On December 11, 1995, CHA issued a notice demanding that McDonald pay the claimed $408.00 in back rent. *See* CHA Exhibit No. 1. On December 13, 1995, one of CHA's agents executed a return of service on a copy of the notice by which she certified that she personally served a copy of that notice on McDonald that day. *Id.* McDonald testified at trial, however, that he was not personally served with the notice, but found it on the floor of his apartment after it had apparently been slid in under the door. Accordingly, McDonald contends that the service on him was defective as not in compliance with the requirements of 735 ILCS 5/9–211, and termination of the lease was not effective. McDonald's plan is also a "save the apartment" plan. McDonald filed his bankruptcy petition before CHA obtained a state court order for possession of the demised premises. The Trustee recommended confirmation of McDonald's plan.

## III. *STANDARDS OF PROOF*

With respect to the motions to modify the stay, CHA, as movant, has the burden of proof on the issue of the Debtors' equity in the subject leaseholds. *See* 11 U.S.C. § 362(g)(1). The Debtors, as opponents of the relief sought, have the burden of proof on all other issues. *See* 11 U.S.C. § 362(g)(2). The Debtors have the burden of proof in order to assume the unexpired leases in their plans, and must thereby cure prepetition defaults, or show adequate assurance of prompt cure. It is also the Debtors' burden to show adequate assurance of future performance under the leases, as well as to compensate (or provide adequate assurance that compensation will be forthcoming) CHA for any actual loss resulting from the defaults. *See* 11 U.S.C. § 365(b)(1) and (3); 11 U.S.C. § 1322(b)(7). Additionally, the Debtors have the burden of proof to establish all required elements for confirmation of their Chapter 13 plans. *See In re Rimgale*, 669 F.2d 426, 431 (7th Cir.1982); *In re Christophe*, 151 B.R. 475, 477 (Bankr.N.D.Ill.1993). For all of these matters, the Court finds that the standard of proof is a preponderance of the evidence. *See generally*, 1 Salerno, Udall and Sirower, *Bankruptcy Litigation and Practice: A Practitioner's Guide* §§ 8.56, 8.70, and 8.72 (2d ed. 1995).

## IV. *DISCUSSION*

### A. *The Parties' Positions*

CHA relies on 735 ILCS 5/9–209 for the proposition that the Debtors' leases were terminated prepetition. The statute provides in relevant part:

A landlord or his or her agent may, any time after rent is due, demand payment thereof and notify the tenant, in writing, that unless payment is made within a time mentioned in such notice, not less than 5 days after service thereof, the lease will be terminated. If the tenant does not within the time mentioned in such notice, pay the rent due, the landlord may consider the lease ended, and sue for the possession under the statute in relation to the forcible entry and detainer, or maintain ejectment without further notice or demand.

735 ILCS 5/9–209. Because the notices issued in each case gave the Debtors a fourteen-day period within which to cure the rental arrearage, and neither Debtor did so within that period, CHA argues that the leases were properly terminated by their own terms and under Illinois law before either Debtor filed his bankruptcy petition. Consequently, CHA maintains that there are no viable leases for the Debtors to save under their Chapter 13 plans through the assumption powers of §§ 365 and 1322(b)(7).

CHA cites *Elizondo v. Medina*, 100 Ill. App.3d 718, 56 Ill.Dec. 301, 427 N.E.2d 381 (1st Dist.1981) for the proposition that the landlord has the right to terminate the lease when the tenant fails to pay within the period prescribed under the statute and the provisions of the lease. In the bankruptcy context, the main cases CHA relies upon are *Chart House, Inc. v. Maxwell (In re Maxwell)*, 40 B.R. 231 (N.D.Ill.1984) and *Cunningham v. Lifelink Corp.*, 159 B.R. 230 (N.D.Ill.1993). Both the *Maxwell* and *Cunningham* opinions were decided in this district and applied Illinois landlord-tenant law in the bankruptcy reorganization context.

The Debtors' principal defense is that their leases were not terminated under Illinois law or for Bankruptcy Code purposes because no state court order for possession of the demised premises had been entered prior to the time the Debtors filed their Chapter 13 petitions. Thus, the leases retained enough viability to be assumed under the Chapter 13 plans at bar. The main authorities relied upon by the Debtors are *Robinson v. Chicago Housing Authority*, 54 F.3d 316 (7th Cir. 1995) and *In re Brown*, No. 95 B 16825, slip op. (Bankr.N.D.Ill. Dec. 19, 1995) (Ginsberg, J.).

### B. *Lease Termination Under Illinois Law and the Bankruptcy Code*

Initially, the Court notes that it must apply substantive applicable Illinois landlord-tenant law to the extent it does not conflict with federal policies as embodied in the Bankruptcy Code. *See Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). The ultimate issue the Court must decide is whether or not the

Debtors' leases were terminated prepetition as a matter of law in accordance with the lease terms and Illinois law. If the answer is yes, then there are no unexpired leases for the Debtors to assume and save through their respective Chapter 13 plans, and CHA's § 362(d) stay relief motions should be granted. If the answer is no, then the leases can be assumed and thereby saved as unexpired through §§ 365(b) and 1322(b)(7), the stay relief motions should be denied, and if the Debtors' plans meet the various requirements for confirmation, the plans should be confirmed.

*Robinson* held that the Illinois process for evicting a delinquent tenant for non-payment of rent under the recodified Forcible Entry and Detainer Act, 735 ILCS 5/9–101 *et seq.,* involves five steps:

> [T]he first essential step is that the tenant must be delinquent in her rent. Second, the landlord must notify the tenant, in writing, that the rent must be paid within no less than five days. Third, the specified time period mentioned in the notice must pass without tender of payment by the tenant. Fourth, the landlord must sue for possession or maintain ejectment and obtain a judgment for possession. Fifth, and finally, a writ of possession issues pursuant to the judgment for possession.

54 F.3d at 321–22 (citations omitted). *Robinson* held that debtor tenants cannot save their leases through the assumption powers of the Bankruptcy Code after the fourth step has been completed. *Id.* at 322. *Robinson* affirmed a bankruptcy court decision for the landlord because the landlord had been able to obtain a state court order for possession prior to the time the debtor filed for bankruptcy relief.

The facts in *Robinson* were not unlike the facts in these cases, save for a critical one: the *Robinson* landlord had won the proverbial race to the courthouse and was able to obtain a state court order for possession of the subject premises before the debtor filed her bankruptcy petition. 54 F.3d at 317. This fact was outcome determinative because, after that point in time, no unexpired lease remained for the debtor to assume. *Id.* at 322. Thus, a fair reading of *Robinson*

would indicate that if a landlord has successfully completed the first four of the five steps necessary to evict a tenant from actual possession under Illinois law, the landlord has terminated the lease and precluded its assumption by the tenant in a bankruptcy reorganization. *Id.* at 321–22. *Robinson* noted that, "the occurrence or execution of all the five steps may not be necessary for the tenant to lose her right to possession." *Id.* at 321. *Robinson* left open the question of whether a lease may be "terminated" or "expired" after a landlord completes the third step, and thereby questioned *Maxwell* and *Cunningham's* conclusion that a lease terminates prior to a judgment of possession. *Id.* at 322.

*Robinson* also noted that "absent a waiver of forfeiture by the landlord, the lease may not be deemed 'unexpired' beyond [completion of the fourth step.]" *Id.* at 322 n. 2. *Robinson* cited several Illinois cases for the proposition that if a landlord acts inconsistently with his 'declaration of forfeiture' then he may have waived the forfeiture. *See Chicago Housing Authority v. Taylor,* 207 Ill. App.3d 821, 152 Ill.Dec. 730, 566 N.E.2d 417 (1st Dist.1990) and *Housing Authority for LaSalle County v. Little,* 64 Ill.App.3d 149, 21 Ill.Dec. 25, 380 N.E.2d 1201 (3d Dist. 1978).

Judge Ginsberg's opinion in *Brown* also questioned the holdings in *Maxwell* and *Cunningham,* and concluded that *Robinson* and notions of Fifth and Fourteenth Amendment constitutional due process preclude a rule finding a lease terminated as a matter of law until all essential steps have been taken. *Brown,* No. 95 B 16825, slip op. at 5. Thus, *Brown* seems to have concluded, as the Debtors argue, that all of the steps set forth in *Robinson* must be completed by the landlord before a tenant's ability to save the lease via the bankruptcy assumption powers are foreclosed. In *Brown,* a state court order for possession had been entered ex parte, but vacated, and set for trial on the merits. *Id.* at 3. This was sufficient for Judge Ginsberg to conclude that the debtor had legal recourse to revive her lease under the *Robinson* analysis, which therefore made her lease unexpired for assumption purposes under

§§ 365(b) and 1322(b)(7). Moreover, she had a defense under her Chapter 13 plan to that landlord's stay relief request.

■■■ With all due respect, the Court cannot adopt or accept the constitutional due process premise in *Brown* as an appropriate legal basis for concluding that a lease cannot be terminated or expired for bankruptcy purposes until there has been a judicial finding of same after the eviction process has been initiated by the landlord. First, the cited cases in *Robinson* to that effect (*Matter of Ross v. Metropolitan Dade County*, 142 B.R. 1013 (S.D.Fla.1992), *aff'd without opinion*, 987 F.2d 774 (11th Cir.1993) and *In re Talley*, 69 B.R. 219 (Bankr.M.D.Tenn.1986)) construed and applied Florida and Tennessee law, respectively, not Illinois law. Indeed, *Talley* held that under Tennessee law the debtor could assume that lease even after a judgment for possession had been entered in favor of the landlord, but no writ of possession had yet been served on the debtor, which is contrary to the holding in *Robinson*. Second, and more importantly, Illinois law has long held that under its terms and provisions, a lease may be terminable before the expiration of the term stated therein at the option of one of the parties, and such provisions should be construed and given effect in accordance with their import. *See generally*, 24 Illinois Law and Practice, *Landlord and Tenant*, § 192 (1980 and 1996 Supp.) (collecting cases). Similarly, it has long been part of Illinois common law that a tenancy for a term may end before the expiration of the term by the tenant's forfeiture because of a breach of a covenant, such as a failure to pay the rent reserved under the lease. *Id.* at § 231. To conclude, as *Brown* seemingly does, that an Illinois lease does not terminate until the point in time when a judge so finds, is a constitutional leap that the Court is unwilling to make, in the absence of binding precedent from either the Seventh Circuit or the United States Supreme Court. Neither the constitutional text of either the Fifth or Fourteenth Amendments so states, nor does *Robinson* so hold.

*Robinson* does not specify whether there may be an earlier point in time, prior to completion of the fourth step, but after completion of the third step (per *Maxwell* and *Cunningham*), at which a debtor may still attempt to save the leasehold, despite having received the landlord's notice, and despite the statutory and/or lease term for tender of the rental arrearage having run without the tenant having cured through timely tender of the delinquent rent.

This is the point in time at which both Gant and McDonald found themselves for purposes of these matters. They had not paid the delinquent rent demanded in CHA's notices, and CHA had sued for possession in state court, but had been unable to obtain orders for possession before Gant and McDonald filed their respective bankruptcy petitions. CHA therefore strongly urges the Court to follow the rule employed in *Maxwell* and *Cunningham* and find that the subject leases were "terminated" under 735 ILCS 5/9–209 and "expired" for purposes of § 365 when the Debtors did not pay the arrearage within the fourteen-day period after the dates they were served with the notices or, at the latest, when CHA filed the state court eviction actions. On the other hand, the Debtors contend that under *Robinson*, as applied by *Brown*, each lease was still viable and "unexpired" for bankruptcy assumption purposes. Accordingly, the Court must delve into the murky trench of the time line between the completed third and the uncompleted fourth step, per *Robinson's* five step analysis, to see if either Debtor no longer has legal recourse to revive the lease, as of the time each Debtor filed his bankruptcy petition.

■■■ Thus, the Court holds that the proper application of the teachings of *Robinson*, *Maxwell*, and *Cunningham* is to ascertain whether the landlord has complied with the relevant lease and statutory requirements and is not subject to a valid equitable defense in order to determine whether a defaulting tenant who files a bankruptcy petition prior to entry of an order for possession of the premises under the Illinois Forcible Entry and Detainer Act may save the leasehold via the assumption powers of the Bankruptcy Code.

■ The Court concludes that due process concerns must be met before depriving a debtor tenant of actual *possession* of the demised premises. The Forcible Entry and Detainer Act and its procedural safeguards, ensure that a debtor tenant is afforded both notice and opportunity for hearing before an eviction from the premises. Such safeguards need not be invoked, however, before a defaulting debtor tenant can lose the rights and status of a tenant under a term lease, under the provisions of which a defaulting tenant can forfeit the leasehold, and be relegated to the status of a mere occupant or tenant at sufferance prior in time to a judgment so finding that such default has occurred.

■ The Court agrees with CHA's argument that a tenant's loss of rights under a lease is distinct from, but related to, a subsequent judicial determination that the tenant has lost the right to possess the demised premises. To follow the analysis in *Brown* would be to effectively eviscerate the entire body of common law relating to the concept of holdover tenancies and tenancies at sufferance. After all, *Brown* seems to hold that a defaulting tenant's lease cannot be constitutionally terminated until a judge says so—a proposition to which the Court cannot subscribe. The Court therefore holds that a lease can be properly terminated under Illinois law after step three of the *Robinson* test: at the point in time when the specified time period in a landlord's notice of delinquency has passed without tender of payment by the tenant. Thereafter, the Court may only look to see if, as suggested in the instructive dicta and footnote in *Robinson*, there is some act or omission by the landlord that indicates a waiver or estoppel of the lease termination or some other equitable defense to the notices of termination received by each Debtor in the cases at bar. Thus, the Court focuses on Gant's defense that CHA retained his first late rent payment too long before returning it and accepted his second subsequent late payment. In McDonald's case, the defense is his claim of improper service of the notice under 735 ILCS 5/9–211. The Court will address each case in turn.

## C. *Gant's Defense*

■ Gant contends that CHA has waived its right to terminate the lease through acceptance of subsequent rent accruing after the breach and by retaining the first money order for an unreasonable length of time, namely approximately three weeks between the time Gant mailed the money order and when the building manager returned it to him. In addition, Gant argues that CHA has waived the benefits of its notice by retaining his first tendered delinquent lease payment for an unreasonable period of time. It is undisputed that CHA cashed and retained the second subsequent payment tendered by Gant after he was undisputedly served with the termination notice regarding his lease.

■ CHA retained Gant's first late tender for a period of approximately two to three weeks before sending it to the property manager for ultimate return to Gant. That alone is probably insufficient under *Robinson* for CHA to waive its right to forfeit and terminate the lease. *But see Day–Luellwitz Lumber Co. v. Serrell*, 177 Ill.App. 30, 38–39 (1st Dist.1913) (retention of rent payment for three months without returning it constitutes acceptance). However, CHA's subsequent acceptance and retention of the second late payment constitutes an act inconsistent with CHA's declaration of forfeiture in its notice. *See Robinson*, 54 F.3d at 322 n. 2. Illinois cases support this finding. Courts are quite ready to take hold of any reasonable circumstances that show an intent to waive a forfeiture. *Donovan v. Murphy*, 217 Ill.App. 31, 35 (1st Dist.1920). Any act of a landlord which affirms the existence of a lease and recognizes a tenant as his lessee after the landlord has knowledge of a breach of the lease results in the landlord's waiving his right to forfeiture of the lease. *See Midland Management Co. v. Helgason*, 158 Ill.2d 98, 102, 196 Ill.Dec. 671, 674, 630 N.E.2d 836, 839 (1994) (citing *Vintaloro v. Pappas*, 310 Ill. 115, 117, 141 N.E. 377, 378 (1923)). Acceptance of rent accruing subsequent to a breach is a waiver of the prior breach and operates to reinstate the lease. *Id.* These cases are grounded in the principle that equity abhors a forfeiture. *See Robinson*, 54 F.3d at 322 n. 2. The Court therefore finds

that CHA waived its right to terminate the lease when it accepted and cashed Gant's second late payment after he was served with the termination notice regarding his lease.

### D. McDonald's Defense

McDonald's defense of lack of proper service requires the Court to examine whether CHA, as the landlord, complied with the statutory requirements of the Illinois Forcible Entry and Detainer Act with respect to the form of the notice, as well as its conformance with the terms of the lease (not in question or dispute), and with the service of the termination notice requirements. Proper service of a termination notice may be effected in one of four ways: (1) delivery of a copy of the notice to the tenant; (2) leaving a copy of the notice with some person 13 years of age or older, residing on or in possession of the premises; (3) sending a copy of the notice to the tenant by certified or registered mail with a return receipt from the addressee; or (4) posting the notice on the premises, if no one is in actual possession. *See* 735 ILCS 5/9–211. Strict compliance with this provision is a necessary element of the landlord's forcible entry and detainer action. *See Eckel v. MacNeal,* 256 Ill.App.3d 292, 296, 195 Ill.Dec. 277, 280–81, 628 N.E.2d 741, 744–45 (1st Dist.1993); *but see Ziff v. Sandra Frocks, Inc.,* 331 Ill.App. 353, 355, 73 N.E.2d 327, 328 (1st Dist.1947) (tenant's receipt of termination notice cures any defect in landlord's method of service); *Vole, Inc. v. Georgacopoulos,* 181 Ill.App.3d 1012, 1019, 131 Ill.Dec. 17, 23, 538 N.E.2d 205, 211 (2d Dist.1989) (same); *Cunningham,* 159 B.R. at 235 (same). Only the first option of personal service was attempted and is disputed in this matter.

The adequacy of the return of service can be significant. For example, when a deputy sheriff files a return of service, the return must show the "sex, race, and approximate age" of the person served, and "the place . . . date and time of day when the summons was left. . . ." *See* 735 ILCS 5/2–203(b). Although § 9–211 does not contain such requirements, the return of service at bar references the Debtor as having been personally served with the notice on December 13, 1995 at 12:09 p.m. at the subject apartment with these additional remarks inscribed "short brown complexion no shirt grey pants door wide open." *See* CHA Exhibit No. 1. The return of service is accorded prima facie weight pursuant to 735 ILCS 5/9–212, which provides:

> When such demand is made or notice served by an officer authorized to serve process, the officer's return is prima facie evidence of the facts therein stated, and *if such demand is made or notice served by any person not an officer, the return may be sworn to by the person serving the same, and is then prima facie evidence of the facts therein stated.*

735 ILCS 5/9–212 (emphasis supplied). The affidavit of service is prima facie evidence that process was properly served. *See In re Jafree,* 93 Ill.2d 450, 455, 67 Ill.Dec. 104, 107, 444 N.E.2d 143, 146 (1982). An uncorroborated affidavit asserting improper service is inadequate to overcome the presumption favoring the affidavit of service. *See Paul v. Ware,* 258 Ill.App.3d 614, 617, 196 Ill.Dec. 790, 793, 630 N.E.2d 955, 958 (1st Dist.1994).

Illinois law requires McDonald to rebut the prima facie weight afforded the return of service by clear and convincing evidence. *See Paul v. Ware,* 258 Ill.App.3d at 618, 196 Ill.Dec. at 793, 630 N.E.2d at 958; *Winning Moves, Inc. v. Hi! Baby, Inc.,* 238 Ill.App.3d 834, 838, 179 Ill.Dec. 12, 15, 605 N.E.2d 1026, 1029 (2d Dist.1992). This Court will not require McDonald to rebut the prima facie weight afforded the return of service by clear and convincing proof. Under § 362(g), the standard of proof is a preponderance of the evidence. The federal standards and burdens of proof apply to this stay lift motion. Consequently, the Court will not impose the higher Illinois standard of proof in this contested matter.

McDonald contends that his testimony at trial rebutted the prima facie weight the Court should give the return of service. McDonald's testimony was that, although he thought he was in the apartment that afternoon, he found the notice on the floor and assumed it had been slid under the door to the unit. Thus, he argues that he was not

personally served and CHA did not properly take all necessary steps to terminate his lease.

The process server testified that when she handed him a copy of the notice she asked the man she served whether he was McDonald and he answered in the affirmative. She admitted on cross examination not previously knowing McDonald and serving the notice among the estimated 50 other such notices she serves for CHA on a monthly basis. More importantly, she specifically identified McDonald in court as the individual to whom she handed the copy of the notice.

McDonald argues that his testimony is more credible than the process server's for three reasons: (1) his acknowledged receipt of the notice demonstrates his veracity because if he was inclined not to tell the truth he would have denied receiving the notice at all; (2) he questions the process server's recollection of personal service upon him so many months after the fact; and (3) the process server, as an agent of CHA, is not as credible a witness as a neutral and disinterested party, such as a sheriff.

The testimony of both witnesses was short and balances out fairly evenly, as both witnesses were obviously biased, McDonald in his own favor, and the process server, in favor of her employer, CHA. The Court finds that McDonald's testimony did not rebut the prima facie weight accorded the process server's return of service, as she corroborated the return of service with her trial testimony. McDonald did not establish by a preponderance of the credible evidence that service was improper upon him. Hence, the Court finds that service upon McDonald was proper, and his lease terminated when the period for redemption of the delinquent rent set out in the notice served had passed. As such, the lease expired prior to the date McDonald filed his bankruptcy petition and he may not, therefore assume the lease.

## V. CONCLUSION

For the reasons set forth herein, the Court hereby concludes that CHA has waived the declaration of forfeiture in its termination notice properly served on Gant by accepting a late rental payment for a month subsequently accruing under that lease. Thus, Gant may assume the subject lease in his Chapter 13 plan. The Court denies CHA's motion to modify the stay of § 362(a) as to Gant. Further, the Court finds that Gant has met the requisite elements of confirmation. Under his plan, Gant may assume and cure the arrearage and, through future payments, perform his obligations to pay future rents accruing thereunder pursuant to §§ 365(b) and 1322(b)(7).

In addition, the Court concludes that McDonald did not demonstrate by a preponderance of the evidence that he was improperly served with the termination notice. Consequently, McDonald's lease was terminated prepetition and he may not assume the lease in his Chapter 13 plan. The Court hereby grants CHA's motion to modify the automatic stay as to McDonald. The Court will not confirm his Chapter 13 plan.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. Separate orders shall be entered in each case pursuant to Federal Rule of Bankruptcy Procedure 9021.